[Crim. No. 19249. First Dist., Div. Three. Jan. 31, 1980.]

THE PEOPLE, Plaintiff and Respondent, v.
LARRY ALAN SUITE, Defendant and Appellant.

COUNSEL

August B. Rothschild, Jr., under appointment by the Court of Appeal, for Defendant and Appellant.

George Deukmejian, Attorney General, Robert H. Philibosian, Chief Assistant Attorney General, Daniel J. Kremer, Assistant Attorney General, Karl J. Phaler and Robert M. Foster, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

SCOTT, J.—Larry Alan Suite appeals from the judgment entered after he pled guilty to two counts of possession of a destructive device or explosive in a public place. (Pen. Code, § 12303.2.) His guilty plea followed the denial of his motions to dismiss and to suppress certain evidence. (Pen. Code, §§ 995, 1538.5.)

Appellant contends the trial court erred in not suppressing evidence obtained when state university police arranged for a "trap" of their own telephone line in an effort to locate the source of several bomb threats, and when the police also tape recorded those threatening calls. We disagree. We conclude that "trapping" is not conduct prohibited by Penal Code[1] section 631, subdivision (a), that the taping procedure did not violate the statutory prohibition against recording of a confidential conversation, and that neither the "trapping" nor the tape recording

---

[1] All statutory references are to the Penal Code unless otherwise indicated.

violated appellant's rights under either the Fourth Amendment to the United States Constitution or article I, section 13 of the California Constitution.

Early in the morning of December 5, 1977, an anonymous caller telephoned the emergency police phone number at California State University at San Jose, and reported that a fake bomb had been placed on a stairway of Duncan Hall, a campus building. The call was automatically tape recorded, as are all emergency calls to the university police. The university police officers dispatched to that location found a shoe box, which contained the burned pieces of a propane tank, a battery, a clock, and a rocket engine, all described by one expert as the remains of an improvised explosive device. At least three other anonymous calls were received on that day, all reporting the placement of bombs, set to go off, in various university buildings. Three buildings were evacuated and searched, but no bombs were found.

Later the same day, the university police requested Pacific Telephone to put a "trap" on the university's emergency lines. In the San Jose area, where all telephone switching is done by computer, that computer is ordinarily programmed to retain a record of all calls made *from* every number, for billing purposes. When a "trap" is made, the computer is programmed to record and print out, if requested, the phone number source of all calls *to* a given number.

On December 6, Robert G. Fowler, an assistant professor of biology at the university, received an anonymous call from someone claiming to have placed the device in Duncan Hall. The caller told Fowler that unless he cancelled the genetics exam scheduled for the next day, some of his students would be hurt. Fowler then compiled a list of his students who were "significantly below average" in their grades at that time; appellant was among them.

Later that day, campus police went to an office in the school's Business Tower in response to a call from a custodian. An officer found pieces of twisted metal and part of an electric charcoal starter, which appeared to be the remains of an explosion. The next day, December 7, at 7 a.m., university police received another anonymous call, asking if they had found the "goodie" or "toy" in the Business Tower. The printout *from the* trap indicated that the call came from appellant's phone number.

About an hour later, campus police received a call reporting that a bomb had been placed in the Old Science Building, which was the building where Professor Fowler's exam was to be held. The trap revealed the call came from a campus pay phone.

Appellant was then arrested. A search of his residence and garage, conducted with his consent, disclosed a propane canister and other items.

## I. TRAPPING

### A. *Penal Code Section 631, Subdivision (a)*

First, appellant contends that trapping of a phone line is an "unauthorized connection" prohibited by Penal Code section 631, subdivision (a), and that the evidence obtained thereby is inadmissible.

Section 631 is part of the state's Invasion of Privacy Act (§§ 631-637.2; *People* v. *Conklin* (1974) 12 Cal.3d 259, 263 [114 Cal.Rptr. 241, 522 P.2d 1049]). Section 631, subdivision (a) provides in pertinent part: "Any person who, by means of any machine, instrument, or contrivance, or in any other manner, intentionally taps, or *makes any unauthorized connection*, whether physically, electrically, acoustically, inductively, or otherwise, with any telegraph or telephone wire, line, cable, or instrument,...or who willfully and without the consent of all parties to the communication, or in any unauthorized manner, reads, or attempts to read, or to learn the contents or meaning of any message, ...or who uses, or attempts to use...any information so obtained...is punishable by a fine...or by imprisonment." (Italics added.) Section 631, subdivision (c) provides that no evidence obtained in violation of the section shall be admissible in any judicial proceeding.

The term "unauthorized connection" is undefined by statute. In early cases involving former section 640, the antecedent of section 631, identical language prohibiting an "unauthorized connection" to a telephone line was construed to prohibit a subscriber to telephone service from connecting his own equipment (i.e., an extension line) to his phone line without permission of the telephone company. The consent of both the subscriber and the phone company was required for such a connection to be "authorized." (See, e.g., *People* v. *Trieber* (1946) 28 Cal.2d 657, 662-663 [171 P.2d 1]; see also Comment, *Electronic Surveillance in California: A Study in State Legislative Control* (1969) 57 Cal.L.Rev.

1182, 1202.) However, trapping is not analogous to this form of "unauthorized connection," which in effect was an attempt to utilize the company's line without payment.

More frequently, the prohibitions of section 631, subdivision (a) have been applied to prevent wiretapping or other similar interception of the content of telephone conversations. The Supreme Court's recent discussion of the scope of section 631 in *Tavernetti* v. *Superior Court* (1978) 22 Cal.3d 187 [148 Cal.Rptr. 883, 583 P.2d 737], is instructive. At issue in *Tavernetti* was whether a telephone company employee's conduct in intercepting a private phone conversation and then disclosing its contents to law enforcement officers violated section 631. The court stated: "Section 631, subdivision (a), broadly prohibits the *interception of wire communications and disclosure of the contents of such intercepted communications*" (p. 190, italics added). The court then stated: "Subdivision (a) of section 631 prescribes criminal penalties for three distinct and mutually independent patterns of conduct: intentional wiretapping, wilfully attempting to learn the contents or meaning of a communication in transit over a wire, and attempting to use or communicate information obtained as a result of engaging in either of the previous two activities" (p. 192).

The scope of section 631, subdivision (a) was also discussed in *People* v. *Conklin, supra*, 12 Cal.3d 259, where the court considered whether regulation of wiretapping was preempted by federal law. The court stated: "The state Invasion of Privacy Act (§§ 630-637.2) forbids wiretapping (§ 631) and electronic eavesdropping (§ 632) except by law enforcement officers where such activity was permitted prior to the enactment of the state act (§ 633) and with other limited exceptions (see, e.g., § 633.5)" (p. 263).

Trapping of the police emergency lines here neither intercepted nor revealed the content of any communication, but instead only disclosed the telephone numbers of the callers.

Appellant then relies on section 630, a legislative declaration of policy, to argue that section 631 must be interpreted broadly to prohibit trapping as a new method of electronic surveillance not in existence at the time of its passage.[2] However, section 630 does not support appel-

---

[2]Section 630 provides in pertinent part: "The Legislature hereby declares that advances in science and technology have led to the development of *new devices and*

lant's argument; instead, that section strongly reinforces the conclusion that the Legislature's concern was to prevent secretly listening to the *contents* of private conversations, or eavesdropping. Trapping is not eavesdropping.

## B. *Article I, Section 13 of the California Constitution*

■ Appellant also contends that the trapping violated California's constitutional prohibitions on unreasonable search and seizure, because no warrant was obtained before the trap was initiated. Appellant's contention evidences a fundamental misunderstanding of the constitutional principles involved.

Under certain circumstances, the warrantless seizure of telephone company records of calls made to and from an individual's home, office, or hotel room may violate article I, section 13 of the California Constitution.[3] Whether a caller is at home, in his office, or in a hotel room, he has a reasonable expectation that records of the *private* calls he makes will be utilized only for accounting and billing purposes.[4] (*People* v. *Blair* (1979) 25 Cal.3d 640, 654-655 [159 Cal.Rptr. 818, 602 P.2d 738]; *People* v. *McKunes* (1975) 51 Cal.App.3d 487, 492 [124 Cal.Rptr. 126].) "[T]he critical issue is whether there is an expectation of privacy in the information sought." (*Blair*, at p. 654.)

Appellant's reliance on these cases is sorely misplaced. A person who telephones police and threatens to bomb a public building cannot reasonably expect that records of the call will be private; the *only* reasonable expectation under such circumstances is that police will make use of every available technology to trace the source of that call.

---

*techniques for the purpose of eavesdropping* upon private communications and that the invasion of privacy resulting from the continual and increasing use of *such devices and techniques* has created a serious threat to the free exercise of personal liberties and cannot be tolerated in a free and civilized society." (Italics added.)

[3]Article I, section 13 of the California Constitution provides in part: "The right of the people to be secure in their persons, houses, papers, and effects against unreasonable seizures and searches may not be violated."

[4]We note that the United States Supreme Court reached the opposite conclusion in *Smith* v. *Maryland* (1979) 442 U.S. 735 [61 L.Ed.2d 220, 99 S.Ct. 2577]. The court held that a phone subscriber has no federal constitutional protection in the phone numbers he dials from his home phone, when those numbers are obtained from a pen register installed by the telephone company at the request of the police in offices of the company. (A pen register is a mechanical device which records the numbers dialed from a telephone.) The court rejected the argument that people generally have any expectation of privacy in the telephone numbers they call.

## II.  Tape Recording

### A.  *Penal Code Section 632*

The university police routinely tape recorded all incoming calls on their two emergency lines. ■ Appellant first contends the taping procedure violates Penal Code section 632.[5] ■ Appellant correctly states that section 632 goes beyond the scope of section 631 by prohibiting not only eavesdropping, but also recordation of a confidential communication. A participant to a telephonic communication is exempted from the prohibition against recording the communication only if the other participant knows that it is being recorded. (*Forest E. Olson, Inc.* v. *Superior Court* (1976) 63 Cal.App.3d 188, 191 [133 Cal.Rptr. 573].)

However, it is the recording of a "confidential communication" that is prohibited by section 632, subdivision (a). As defined by section 632, subdivision (c), a confidential communication includes "any communication carried on in such circumstances as may reasonably indicate that any party to such communication desires it to be confined to such parties, but excludes a communication made in a public gathering or in any legislative, judicial, executive or administrative proceeding open to the public, *or in any other circumstance in which the parties to the communication may reasonably expect that the communication may be overheard or recorded.*" (Italics added.)

■ It is ludicrous for the appellant to argue that his calls were confidential communications, the contents of which he wanted to be restricted to himself and their recipient. Surely a telephone call to the law enforcement officials of a state university, threatening that a bomb has been placed and set to go off in a university building, is not a confidential communication within the meaning of this statute. ■ Furthermore, if there is any doubt that this conversation was not a confidential communication as defined above, section 633.5 would authorize the recording. That section provides: "Nothing in Section 631 or 632 shall be construed as prohibiting one party to a confidential communication from recording such communication for the purpose of

---

[5]Section 632 provides in pertinent part: "(a) Every person who, intentionally and without the consent of all parties to a confidential communication,...eavesdrops upon or records such confidential communication...shall be punishable by fine...or by imprisonment."

obtaining evidence reasonably believed to relate to the commission by another party to such communication of the crime of extortion, kidnapping, bribery, *any felony involving violence against the person....*" (Italics added.) A bomb threat unquestionably involves the potential for such violence.

### B. *Fourth Amendment Protection*

Relying on *Katz* v. *United States* (1967) 389 U.S. 347 [19 L.Ed.2d 576, 88 S.Ct. 507], appellant then argues that the warrantless recording of his telephone calls was prohibited by the Fourth Amendment. Again, appellant ignores the obvious and elementary distinction between Fourth Amendment cases he cites and the facts at hand. At issue in *Katz* was the government's recording of a defendant's telephone calls made from a public phone booth. The court noted that even though the calls were made from a public booth, the caller nonetheless had a reasonable expectation that his calls would not be broadcast to the world. "The Government's activities in electronically listening to and recording the petitioner's words violated the privacy upon which he justifiably relied while using the telephone booth." (389 U.S. at p. 353 [19 L.Ed.2d at p. 583].) Appellant here can claim no similar reasonable expectation that the content of his threatening calls would be private.

### III. CONCLUSION

Finally, despite his guilty plea to violations of section 12303.2, appellant now contends the devices which he possessed were neither destructive devices nor explosives within the meaning of that statute.

Issues cognizable on appeal following a guilty plea are limited to issues based on "reasonable constitutional, jurisdictional, or other grounds going to the legality of the proceedings" resulting in the plea. (§ 1237.5; *People* v. *DeVaughn* (1977) 18 Cal.3d 889, 895 [135 Cal.Rptr. 786, 558 P.2d 872].) By entering a guilty plea to an offense, a defendant admits each element of the offense. (*People* v. *Stanworth* (1974) 11 Cal.3d 588, 605 [114 Cal.Rptr. 250, 522 P.2d 1058].) As appellant's guilty plea in effect admitted that the devices he possessed were explosive devices within the meaning of the statute, he cannot now raise that issue on appeal.

Appellant's reliance on *People* v. *Rebeles* (1971) 16 Cal.App.3d 952 [94 Cal.Rptr. 463], is misplaced. The defendant in that case appealed a

finding that he was armed with a firearm after he pled guilty to a count which did *not* allege that he was so armed.

Judgment is affirmed.

White, P. J., and Feinberg, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied March 27, 1980.