[No. G014020. Fourth Dist., Div. Three. Aug. 31, 1994.]

CHRISTOPHER G. COULTER, Plaintiff and Appellant, v.
BANK OF AMERICA NATIONAL TRUST AND SAVINGS
ASSOCIATION et al., Defendants and Respondents.

COUNSEL

Connie D. Zimmerman and Alan P. Dove for Plaintiff and Appellant.

Paul, Hastings, Janofsky & Walker, Paul W. Cane, Jr., Barbra L. Davis and Rosemary M. Kirbach for Defendants and Respondents.

OPINION

**WALLIN, Acting P. J.**—Christopher Coulter was an amateur sleuth. By hiding two small tape recorders in his pockets, he boasts, he covertly

recorded over 160 private conversations with his supervisors and coworkers at Bank of America, where he was employed. In this case, his sleuthing has cost him $132,000, the damages awarded the bank and 11 of its employees under the Privacy Act (Pen. Code, § 630 et seq.),[1] which prohibits recording confidential communications without the consent of all parties, when their motions for summary adjudication were granted.[2] Coulter appeals contending there was a material issue of fact as to whether the conversations he recorded were confidential. He contends they were not because he never intended them to be, he made the tapes for his own use and did not disseminate them to third persons and the substance of some of the conversations was related to bank management personnel. We affirm.

Coulter was employed by Bank of America as an automatic teller machine technician. He began to experience largely unexplained problems with various supervisors and coworkers at the bank in 1989. In apparent anticipation of litigation he would later file, claiming sexual harassment and lack of adequate grievance review procedures, Coulter began secretly tape-recording face-to-face and telephone conversations with various bank employees, supervisors and officers. In December 1991, Coulter filed his lawsuit against the bank and 13 employees. During discovery, Coulter turned over 17 tapes containing 160 secretly recorded conversations with bank employees. The bank and 11 employees individually filed a cross-complaint against Coulter for invasion of privacy and for violation of the Privacy Act.[3] All of Coulter's claims against the bank and its employees were dismissed on a demurrer and a later summary adjudication motion. The bank and its employees filed motions for summary adjudication on their causes of action for violation of the Privacy Act. The trial court granted the motion and awarded a combined total of $132,000 in damages, $3,000 for each of 44 specific violations of section 632 as authorized by section 637.2.

*The Recorded Conversations*

*Vincent Castle*

Between November 1990 and May 1991, Castle had four separate private conversations with Coulter regarding Coulter's employment complaints.

---

[1] All statutory references are to the Penal Code unless otherwise indicated.

[2] The bank and the individual plaintiffs stipulated to dismiss their remaining cause of action for common law invasion of privacy so this appeal could go forward.

[3] One cross-complaint was filed naming Calvin Lee, Michael Leith, Gene Kawamoto, James Donoghue, Timothy Parkey, Keith Tibbetts, Joseph Coute, Sharon Reese, Nancy Bosco, Richard Rivera and Mary Lou Neilson as cross-complainants. The bank filed its own cross-complaint claiming damages based on the recording of conversations Coulter had with its officer, Vincent Castle.

Castle submitted his declaration stating he intended these conversations to be confidential and did not know Coulter was recording them. Had Coulter asked for permission to record the conversations, Castle would have denied it. In April 1991, Coulter was expressly warned that he could not tape-record conversations with bank employees. Coulter admitted he recorded the conversations without telling Castle or seeking his permission. He disputed that the conversations were confidential, declaring, "All parties to the taped conversations knew that the matters discussed between them during those conversations would be passed on to others at the Bank."

*The Bank Employees*

Coulter admitted that he secretly recorded 40 conversations with 11 different bank employees without seeking or obtaining their permission.[4] Each of the employees submitted affidavits stating the conversations were in private, they intended them to be confidential, and they did not consent to their being recorded. The incidents are summarized:

Calvin Lee, a bank-vice president, had two conversations with Coulter on October 10, 1990, and November 8, 1991, regarding Coulter's job complaints, a pending human resources investigation, and a coworker's claim that Coulter was harassing her. The conversations were held in Lee's private office or another room in the office and only Lee and Coulter were present. Lee intended the conversation to be confidential. Michael Leith, another bank vice-president, had two conversations with Coulter on October 25, 1990, and July 30, 1991, regarding Coulter's job performance and a coworker's claim that Coulter was harassing her. The conversations were held in Leith's private office or another room in the office and only Leith and Coulter were present. Leith intended the conversation to be confidential.

Gene Kawamoto, a bank field manager, had a telephone conversation with Coulter on November 5, 1990, in which they discussed an upcoming meeting Coulter was to have with bank management. Kawamoto intended the conversation to be confidential. James Donoghue, a bank field manager, had four separate conversations with Coulter at which they discussed Coulter's job objectives, his transfer to a different region, and his working relationship with other employees. The conversations were all in Donoghue's private office or over the telephone and intended by Donoghue to be confidential. Tim Parkey, a bank field manager, had one conversation with Coulter

---

[4]Coulter boasted in depositions that he recorded over 160 conversations with these employees. In discovery he produced the tapes and a detailed index of each conversation. The bank and the employees sought summary adjudication only as to 44 of those conversations about which there was no uncertainty as to the date, the content or the parties involved.

regarding Coulter's complaints about a coworker. Parkey intended to discuss the complaints with the other employee, but intended the conversation with Coulter to be confidential. Keith Tibbetts, a bank field manager, had 18 conversations with Coulter regarding his job performance, working relationship with other employees, overtime and disciplinary matters. The conversations were either in Tibbetts' private office or on the telephone, and believed by Tibbetts to be confidential.

Joseph Coute, a bank vice-president, had one conversation with Coulter, in his private office, regarding Coulter's concerns about bank management and pay. Coulter abruptly left the room after 45 minutes, making Coute suspicious that Coulter was recording the conversation. When Coute directly asked if this were the case, Coulter refused to answer. Coute told Coulter he did not consent to being recorded and the conversation ended.

Sharon Reese, a human resources representative, had five private conversations with Coulter regarding an investigation she was conducting. She intended the conversations to be confidential. Nancy Bosco, a coworker, had five private telephone conversations with Coulter regarding her own job dissatisfaction. She specifically implored Coulter to not reveal her complaints to anyone and intended the conversations to be confidential. Richard Rivera, a coworker, had one telephone conversation with Coulter regarding work coverage and scheduling. He intended the conversation to be confidential. Mary Lou Neilson, an office manager, had one private telephone conversation with Coulter regarding his complaints about a coworker. Neilson intended the conversation to be confidential.

Coulter disputed that the conversations were intended to be confidential because he believed the parties to them knew the substance of them would be passed on to others at the Bank. He also stated that in January 1991 his attorney revealed that Coulter was secretly recording conversations and that both Tibbetts and Coute told Coulter they suspected him of recording their conversations. Other employees whose conversations he recorded had subsequently informed their superiors of the substance of the conversations. Coulter stated he did not intend the conversations to be confidential. He made the tapes only to refresh his own memory about the conversations and did not disclose the tapes to any third person.

■ Coulter contends the trial court erred in granting the motions for summary adjudication (Code Civ. Proc., § 437c) because there was a material issue of fact as to whether he secretly recorded a *confidential* communication. We need not reiterate the oft-stated standard for granting and reviewing a summary adjudication motion. Suffice it to say that if there is a triable

issue of fact we must reverse. (See *Molko* v. *Holy Spirit Assn.* (1988) 46 Cal.3d 1092, 1107 [252 Cal.Rptr. 122, 762 P.2d 46].) There is not and we affirm.

In 1967 the Legislature adopted the Privacy Act because it perceived that ". . . advances in science and technology have led to the development of new devices and techniques for the purpose of eavesdropping upon private communications and that the invasion of privacy resulting from the continual and increasing use of such devices and techniques has created a serious threat to the free exercise of personal liberties and cannot be tolerated in a free and civilized society." (§ 630.) Among other things, the Privacy Act prohibits wiretapping (§ 631), interception of cellular telephone conversations (§ 632.6), and eavesdropping on or recording confidential communications (§ 632). Section 637.2 provides a private cause of action for any person injured by a violation of the Privacy Act with statutorily prescribed damages of $3,000 per violation.[5] The plaintiff need not prove any actual damages. (§ 637.2.)

Section 632,[6] the provision at issue here, prohibits eavesdropping or intentionally recording a confidential communication without the consent of *all* parties to the communication. (§ 632, subd. (a).) A "confidential communication" is one "carried on in circumstances as may reasonably indicate that any party to the communication desires it to be confined to the parties thereto . . . ." (§ 632, subd. (c).)

---

[5]A 1992 amendment to section 637.2 increased the fine from $3,000 to $5,000. (Stats. 1992, ch. 298, § 11.)

[6]Section 632, provides in pertinent part: "(a) Every person who, intentionally and without the consent of all parties to a confidential communication, by means of any electronic amplifying or recording device, eavesdrops upon or records the confidential communication, whether the communication is carried on among the parties in the presence of one another or by means of a telegraph, telephone, or other device, except a radio, shall be punished by a fine not exceeding two thousand five hundred dollars ($2,500), or imprisonment in the county jail not exceeding one year, or in the state prison, or by both that fine and imprisonment. If the person has previously been convicted of a violation of this section or Section 631, 632.5, 632.6, 632.7, or 636, the person shall be punished by a fine not exceeding ten thousand dollars ($10,000), by imprisonment in the county jail not exceeding one year, or in the state prison, or by both that fine and imprisonment.

"(b) The term 'person' includes an individual, business association, partnership, corporation, or other legal entity, and an individual acting or purporting to act for or on behalf of any government or subdivision thereof, whether federal, state, or local, but excludes an individual known by all parties to a confidential communication to be overhearing or recording the communication.

"(c) The term 'confidential communication' includes any communication carried on in circumstances as may reasonably indicate that any party to the communication desires it to be confined to the parties thereto, but excludes a communication made in a public gathering or in any legislative, judicial, executive or administrative proceeding open to the public, or in any other circumstance in which the parties to the communication may reasonably expect that the communication may be overheard or recorded."

Coulter half-heartedly suggests section 632 is inapplicable because it prohibits only third party interceptions of confidential communications and does not preclude a party to a conversation from recording it. To the contrary, ". . . the Privacy Act has long been held to prevent one party to a conversation from recording it without the other's consent." (*Ribas* v. *Clark* (1985) 38 Cal.3d 355, 360 [212 Cal.Rptr. 143, 696 P.2d 637, 49 A.L.R.4th 417]; *Frio* v. *Superior Court* (1988) 203 Cal.App.3d 1480, 1487-1488 [250 Cal.Rptr. 819]; *People* v. *Suite* (1980) 101 Cal.App.3d 680, 688 [161 Cal.Rptr. 825]; *Warden* v. *Kahn* (1979) 99 Cal.App.3d 805, 812 [160 Cal.Rptr. 471]; *Forest E. Olson, Inc.* v. *Superior Court* (1976) 63 Cal.App.3d 188, 191 [133 Cal.Rptr. 573].)

Coulter's primary argument is that there was a material issue of fact as to whether the conversations were confidential. Each employee submitted declarations detailing the circumstances surrounding the conversations, the topics discussed and their own belief and expectation that the conversations were confidential. Coulter contends since he never intended the conversations to be confidential, they were not. He also contends it was expected that the subject matter of the conversations would be repeated to other bank employees, which removed them from any statutory protection.

The test of confidentiality is objective. Coulter's subjective intent is irrelevant. (*O'Laskey* v. *Sortino* (1990) 224 Cal.App.3d 241, 248 [273 Cal.Rptr. 674].) "A communication must be protected if *either* party reasonably expects the communication to be confined to the parties." (*Frio* v. *Superior Court, supra,* 203 Cal.App.3d at p. 1488, italics added.) It is sufficient that the bank employees who were secretly recorded expected the conversations to be private.

Furthermore, that the subject matter might be later discussed has no bearing on whether section 632 has been violated. "While one who imparts private information risks the betrayal of his confidence by the other party, a substantial distinction has been recognized between the secondhand repetition of the contents of a conversation and its simultaneous dissemination to an unannounced second auditor, whether that auditor be a person or a mechanical device." (*Ribas* v. *Clark, supra,* 38 Cal.3d at pp. 360-361.) "[U]nder section 632 'confidentiality' appears to require nothing more than the existence of a reasonable expectation by one of the parties that no one is 'listening in' or overhearing the conversation." (*Frio* v. *Superior Court, supra,* 203 Cal.App.3d at p. 1490.) There was no material issue regarding confidentiality. Each of the employees involved submitted a declaration stating he or she believed the conversations to be private, most were held in private offices with no one else present, and they believed no one else was

listening in on their conversations. Coulter provided no evidence to the contrary. He admitted the circumstances of each conversation. No evidence suggests the employees whose conversations he recorded did not have a reasonable expectation the conversations were confidential.

We address briefly the other specific points made by Coulter. First, he suggests that because he never disclosed the tapes to any third party, there was no violation of the Privacy Act. There is no disclosure requirement. (*Friddle* v. *Epstein* (1993) 16 Cal.App.4th 1649, 1659-1660 [21 Cal.Rptr.2d 85].) Section 632 prohibits *recording* a confidential communication without consent of all parties. It says nothing about publishing the communication to a third party.

Next, Coulter argues there was evidence that two of the employees who were recorded, Coute and Tibbetts, may have suspected their conversations had been or were being recorded. Therefore there was a material issue as to whether there was consent. In the motions below, Coulter admitted that *all* of the recordings were done without the knowledge or consent of the persons involved. He cannot now claim there was a factual issue regarding consent.

Finally, Coulter argues the bank lacks standing to assert a claim for violation of the Privacy Act. The bank pursued its independent claim based on Coulter's recording of conversations with Castle, an officer of the bank. Castle did not sue separately as did the other bank employees. ■ Although a corporation may not pursue a common law action for invasion of privacy, it may bring an action for violation of the Privacy Act. (*Ion Equipment Corp.* v. *Nelson* (1980) 110 Cal.App.3d 868, 879-880 [168 Cal.Rptr. 361].) We reject the argument.

The judgment is affirmed.

Sonenshine, J., and Bedsworth, J.,* concurred.

---

*Judge of the Orange Superior Court sitting under assignment by the Chairperson of the Judicial Council.