114 Cal.Rptr.2d 881 (2001)
94 Cal.App.4th 1203
Charles BURNS, Plaintiff and Appellant,
v.
NATURE'S BEST et al., Defendants and Appellants.
No. G023339.
Court of Appeal, Fourth District, Division Three.
December 28, 2001.
Review Granted May 1, 2002.
*882 Latham & Watkins, Jon D. Anderson, Costa Mesa, Julie V. King, and Neil G. Kenduck, Santa Ana, for Plaintiff and Appellant.
Wood, Bohm & Francis, Lee A. Wood, Bohm, Francis, Kegel & Aguilera and James G. Bohm, Irvine, for Defendants and Appellants.

OPINION
SILLS, P.J.
This case requires us to consider the definition of "confidential communication" under section 632 of California Privacy Act (Pen.Code, § 630 et seq.)[1] Because we determine the trial court incorrectly followed Coulter v. Bank of America (1994) 28 Cal.App.4th 923, 33 Cal.Rptr.2d 766, we reverse the judgment in favor of Charles Burns on his cause of action against Nature's Best and Timothy Groff for secretly recording a telephone conversation and remand for a new trial.

FACTS
Amplicon, Inc. leases computer equipment and software to businesses, using salespersons to contact prospective customers by telephone to determine their needs and arrange leases. In 1992, Nature's Best leased computer software from a subsidiary of Amplicon. A dispute arose over the value of the leased software at the end of the lease term. In August 1995 Amplicon sued Nature's Best for breach of the lease (the Lease Case). Nature's Best cross-complained against Amplicon for unfair business practices.
Nazli Ozen was a new salesperson with Amplicon in September 1995. Unaware of Amplicon's relationship with Nature's Best, Ozen "cold called" Nature's Best and left a message with her standard sales pitch on the voice mail recorder of Nature's Best's controller, Jon Lira. Lira forwarded the voice mail message to Tim Groff, Nature's Best's chief financial officer, who was the person "primarily responsible for looking after Nature's Best's interests" in the lawsuit over the lease dispute with Amplicon.
Groff did not know whether Ozen's call was "an attempt on her behalf to get information about Nature's Best for the company or if they were really truly soliciting." Thinking he might be able to get information supporting Nature's Best's claim of unfair business practices, he pretended he was interested in leasing and engaged in several conversations with Ozen, two of which he tape recorded. The second recorded conversation included Charles Burns, Ozen's sales manager. Both tape recorded conversations took place in Groff's private office, on the speakerphone, with Lira also present. Groff introduced Lira in both conversations, but in neither conversation did he ask Ozen or Burns' permission to tape record. Groff assumed Ozen would have discontinued the conversation if she knew she was being recorded, and he "wanted to see what they would say if they did not know they were being tape recorded...."
After the first conversation, Ozen told Burns that she "had somebody who was interested in obtaining some leasing" and she needed some help on the follow-up call. Like Ozen, Burns was not aware of the prior relationship between Amplicon and *883 Nature's Best. He knew they were being broadcast on a speakerphone and that Lira was present during the conversation, but he saw no need "to confirm that the conversation would be private to just [them] and whoever [sic ] was on the phone." Although he did not particularly care whether anyone other than Groff and Lira overheard the conversation, and he made no effort to limit the conversation to Groff and Lira, he had no reason to expect that someone was overhearing.
Groffs deposition was taken in the Lease Case a few days after the recorded conversation with Burns and Ozen. During the deposition, Groff identified Burns and Ozen as people he thought had treated Nature's Best "unfairly." When asked if the conversation had been recorded, Groff refused to answer, claiming the Fifth Amendment privilege against self-incrimination. Burns found out that the conversation might have been recorded shortly after Groffs deposition. He was "kind of dumbfounded as to why they'd be taping me" because he had no involvement with either the lawsuit or Nature's Best. He was worried about his job and felt Nature's Best was "pitting [him] against [his] employer" and trying to "drive a wedge between [him] and [his] employer."
Nature's Best refused to disclose the taped conversations until January 1997, almost a year and a half after Groffs deposition. During that time, Nature's Best claimed "the tapes had ferreted out the truth, that they could prove using the tapes charges of fraud, misrepresentation, extortion, generally criminal behavior on the part of Chuck and Nazli." Patrick Paddon, the president and majority shareholder of Amplicon, testified, "[T]he charges were hard to believe, but they were serious. They were made by a law firm. They were put forth as if they were true. It did ... cause some concern." When Paddon finally read the transcripts of the conversations, "it relieved [his] mind enormously."
In August 1996, Amplicon and Burns filed a complaint in municipal court for unlawful recording of confidential communications based on Penal Code section 632, subdivision (a) (the Tape Case). They claimed statutory damages of $5,000 for each violation, or three times the amount of actual damages as a result of the wrongful acts. Nature's Best filed a cross-complaint for unfair business practices in the Tape Case. It then moved to consolidate the Lease Case and the Tape Case because they were factually related, claiming it would avoid duplicative discovery, overlapping trials, and inconsistent judgments. Although Amplicon opposed consolidation, the cases were consolidated in April 1997, and the trial court ordered the Tape Case to be tried first before a jury in superior court. The jury returned special verdicts finding that Burns and Ozen had a reasonable expectation of privacy in the telephone conversations, Groff recorded the conversations in violation of the Privacy Act, in doing so he was acting as Nature's Best's agent, and Burns suffered actual damages in the amount of $12,000. Judgment was entered accordingly.
Subsequently, Burns and Amplicon moved to enter a new judgment because Burn's actual damages had not been trebled as required by the Privacy Act. The court entered an award of $10,000 to Amplicon and $25,000 to Burns, limiting his award to the jurisdictional limit of the municipal court. Nature's Best and Groff timely filed their notice of appeal; they later settled with Amplicon and dismissed the appeal against it, leaving their appeal against Burns. Burns filed a cross-appeal, claiming he should have been awarded the full $36,000. Because we reverse the judgment in favor of Burns, his cross-appeal on damages is moot.

*884 DISCUSSION

Nature's Best contends the jury verdict must be reversed because the trial court incorrectly perceived the law underlying the pivotal issue in the case: the definition of "confidential communication" under the Privacy Act. At the status conference several months before trial, the trial court ruled that "confidentiality requires nothing more than the existence of a reasonable expectation by one of the parties that no one is listening in or overhearing the conversation," relying on this court's opinion in Coulter v. Bank of America, supra, 28 Cal.App.4th 923, 33 Cal.Rptr.2d 766. This preliminary determination influenced evidentiary rulings during the trial and the instructions to the jury.
Nature's Best argues the conversation with Burns that Groff surreptitiously recorded could not be a confidential communication as a matter of law because Burns had no reasonable expectation of privacy during it, as demonstrated by his testimony that he knew he was being broadcast on a speakerphone and he did not care if the conversation was overheard. It claims the correct interpretation of "confidential communication" under the Privacy Act is found in O'Laskey v. Sortino (1990) 224 Cal.App.3d 241, 273 Cal.Rptr. 674, which held confidentiality requires one of the parties to reasonably expect the conversation will be "confined to the parties thereto." (Id. at p. 247, 273 Cal.Rptr. 674)
Amplicon asserts whether Burns had a reasonable expectation of privacy is a question of fact that was resolved in his favor by the jury. It urges us to defer to the jury as fact-finder and uphold its finding as supported by substantial evidence. But the issue presented is a question of statutory interpretation; accordingly, we are not bound by either the jury's determination of fact or the trial court's determination of law, and we undertake an independent review. (California Teachers Assn. v. San Diego Community College Dist. (1981) 28 Cal.3d 692, 699, 170 Cal. Rptr. 817, 621 P.2d 856.) "Questions of fact concern the establishment of historical or physical facts; their resolution is reviewed under the substantial-evidence test. Questions of law relate to the selection of a rule; their resolution is reviewed independently." (Kennedy/Jenks Consultants, Inc. v. Superior Court (2000) 80 Cal. App.4th 948, 959, 95 Cal.Rptr.2d 817, quoting Crocker National Bank v. City and County of San Francisco (1989) 49 Cal.3d 881, 888, 264 Cal.Rptr. 139, 782 P.2d 278.)
Penal Code section 632 makes it illegal to record a confidential communication without the consent of all parties. (§ 632, subd. (a).) The statute defines a "confidential communication" as "includ[ing] any communication carried on in circumstances as may reasonably indicate that any party to the communication desires it to be confined to the parties thereto, but excluding] a communication made in a public gathering or in any legislative, judicial, executive or administrative proceeding open to the public, or in any other circumstance in which the parties to the communication may reasonably expect that the communication may be overheard or recorded." (§ 632, subd. (c).)
In Coulter v. Bank of America, supra, 28 Cal.App.4th 923, 33 Cal.Rptr.2d 766, a bank employee (Coulter) secretly recorded over 160 conversations with fellow employees, supervisors, and officers in anticipation of the litigation he would later file against them and the bank. The conversations were either face-to-face or on the telephone and concerned Coulter's job performance, his complaints, his relationship with co-workers, and other job-related subjects. All the employees signed declarations stating they intended the conversations to be confidential.
*885 Coulter produced the tapes during discovery. The employees then filed a cross-complaint against Coulter for violation of section 632, and successfully moved for summary judgment. On appeal, Coulter claimed there was a question of fact whether the conversations were confidential, contending they were not because "it was expected that the subject matter of the conversations would be repeated to other bank employees...." (Id. at p. 929, 33 Cal.Rptr.2d 766.)
This court affirmed the summary judgment, holding "that the subject matter might be later discussed has no bearing on whether section 632 has been violated...." Quoting from Frio v. Superior Court (1988) 203 Cal.App.3d 1480, 1490, 250 Cal.Rptr. 819, we continued, "`[U]nder section 632 "confidentiality" appears to require nothing more than the existence of a reasonable expectation by one of the parties that no one is "listening in" or overhearing the conversation.'" (Coulter v. Bank of America, supra, 28 Cal.App.4th at p. 929, 33 Cal.Rptr.2d 766.)
In Frio v. Superior Court, supra, a record producer secretly taped telephone conversations with business associates with whom he later became involved in litigation. In a pretrial order, the trial court excluded the producer's testimony about the contents of the conversations based on section 632, subdivision (d), which excludes any evidence obtained as a result of eavesdropping upon or recording a confidential communication in violation of section 632. On petition for writ review, Frio argued that conversations relating to business matters could not reasonably be considered confidential. The court disagreed: "[B]ecause Frio's business involved a few key people, a highly visible product and the potential for substantial profit, there is every reason to believe each of the tape recorded parties reasonably expected their communications would not be simultaneously disseminated to an unannounced second auditor. [¶] All the telephone communications were conducted on a one-on-one basis and related to a profitable venture which the speaker reasonably might expect would be confined to the parties .... [¶] In sum, under section 632 `confidentiality' appears to require nothing more than the existence of a reasonable expectation by one of the parties that no one is `listening in' or overhearing the conversation. Clearly, the communications in issue meet this threshold standard." (Id. at p. 1489-1490, 250 Cal.Rptr. 819.)
O'Laskey v. Sortino, supra, 224 Cal. App.3d 241, 273 Cal.Rptr. 674 articulated a different definition of confidentiality than Frio. In O'Laskey, an investigator hired to determine whether the defendant had traveled outside the state during the year following the accident, posed as a television producer and told the defendant he was one of ten finalists for a $100,000 prize based on his vacationing habits. The investigator recorded the telephone conversation in which the defendant confirmed he had vacationed in Las Vegas. The court reversed the trial court's exclusion of the conversation transcript, stating, "Nothing in this conversation supports [defendant's] claim that a reasonable person would view it as confidential. To the contrary, [defendant] had every reason to hope that his statements would be broadcast into every home with cable television." The court held the test of confidentiality under the statute is whether either party "reasonably expected, under the circumstances ... that the conversation would not be divulged to anyone else." (Id. at p. 248, 273 Cal.Rptr. 674.)
The Ninth Circuit acknowledged that California appellate courts had stated "competing formulations of what a party must reasonably expect for a communication *886 to be confidential" in Deteresa v. American Broadcasting Companies, Inc. (9th Cir.1997) 121 F.3d 460. Deteresa involved a conversation between a television producer and Deteresa, who was a flight attendant on the flight taken by O.J. Simpson shortly after the murders of his ex-wife, Nicole Brown Simpson, and her friend, Ronald Goldman. The producer went to Deteresa's house, identified himself, and told her he wanted to speak to her about appearing on a television show to discuss the flight. Although she said she was not interested in appearing on the show, the producer engaged her in conversation, which he surreptitiously recorded. Deteresa sued ABC for, among other things, violation of section 632 of the Privacy Act. Appealing the summary judgment against her, she argued there was a question of fact whether the conversation was confidential within the meaning of the statute.
The Ninth Circuit described the difference between the Frio and O'Laskey approaches to confidentiality as follows: "Suppose X and Y are hiking in the woods. Y offers to pay X the $5.00 that Y owes X. X tells Y to pay the money to Z, because X owes Z $5.00. When X finds out that Y had taped the conversation, he sues Y. Under Frio, X wins because in the wilderness he had a reasonable expectation that no one overheard their conversation. Under O'Laskey, Y wins, because X had a reasonable expectation that Y would divulge the conversation to Z." (Deteresa, supra, 121 F.3d at p. 464, fn. 1.)
Predicting the California Supreme Court would adopt the O'Laskey approach, the court stated, "The problem with Frio is that it transforms a specific exclusion to the definition of `"confidential communication" into the definition itself. The first clause of section 632(c) explains that `confidential communication includes any communication carried on in circumstances as may reasonably indicate that any party to the communication desires it to be confined to the parties thereto....' [Citation.] If, therefore, neither party reasonably expects the communication to be confined to the parties, it is not confidential. [¶] The second clause of section 632(c) goes on specifically to exclude communications `made in a public gathering ... or in any other circumstance in which the parties to the communication may reasonably expect that the communication may be overheard or recorded.' [Citation.] Thus, where someone reasonably expects that the communication may be overheard, the communication is not confidential. Frio implies, however, that unless someone reasonably expects that the communication will be overheard, the communication is confidential. That interpretation renders the first clause of section 632 surplusage. Under the terms of the statute, if someone does not reasonably expect the conversation to be confined to the parties, it makes no difference under the statute whether the person reasonably expects that another is listening in or not. The communication is not confidential." (Deteresa v. American Broadcasting Companies, supra, 121 F.3d at pp. 464-465, italics added.)
Applying O'Laskey, the Ninth Circuit found Deteresa could not have had an objectively reasonable expectation that the conversation would not be divulged to anyone else. She knew the producer wanted her to appear on television; she did not tell him her statements were in confidence or ask that he not reveal them to anyone else; and he made no promises of confidentiality. "[N]o one in Deteresa's shoes could reasonably expect that a reporter would not divulge her account of where Simpson had sat on the flight and where he had or had not kept his hand." (Id. at p. 465.)
*887 The Supreme Court has not yet decided a case squarely resolving the question of confidentiality under section 632, but it has flirted with the issue. In Ribas v. Clark (1985) 38 Cal.3d 355, 212 Cal.Rptr. 143, 696 P.2d 637, the court referred to section 632 in dicta while discussing another section of the Privacy Act. There, Clark used an extension to listen to a telephone conversation between a recently divorced couple at the ex-wife's request and later testified about the conversation in litigation between the former spouses. The ex-husband filed an action against Clark, alleging, inter alia, a violation of section 631 of the Privacy Act, which prohibits the surreptitious interception of a telephone call; Clark claimed section 631 only applied to wiretaps. The court stated, "We have read section 631 as prohibiting far more than illicit wiretapping. (Tavernetti v. Superior Court (1978) 22 Cal.3d 187, 192-193 [148 Cal.Rptr. 883, 583 P.2d 737].) In Tavernetti, we considered the section to proscribe three separate acts: (1) intentional wiretapping, (2) willful attempts to learn the contents of a communication in transit, and (3) attempts to use or publicize information obtained in either manner. (Id. at p. 192 [148 Cal.Rptr. 883, 583 P.2d 737]; see also People v. Suite (1980) 101 Cal.App.3d 680, 686 [161 Cal.Rptr. 825].) Additionally, the Privacy Act has long been held to prevent one party to a conversation from recording it without the other's consent. (People v. Wyrick (1978) 77 Cal.App.3d 903, 909 [144 Cal.Rptr. 38]; Forest E. Olson, Inc. v. Superior Court (1976) 63 Cal.App.3d 188, 191 [133 Cal. Rptr. 573].) While one who imparts private information risks the betrayal of his confidence by the other party, a substantial distinction has been recognized between the secondhand repetition of the contents of a conversation and its simultaneous dissemination to an unannounced second auditor, whether that auditor be a person or mechanical device. (Warden v. Kahn, supra, 99 Cal.App.3d 805, 813-814 [160 Cal.Rptr. 471].)" (Ribas v. Clark, supra, 38 Cal.3d at p. 360, 212 Cal.Rptr. 143, 696 P.2d 637.)
"As one commentator has noted, such secret monitoring denies the speaker an important aspect of privacy of communicationthe right to control the nature and extent of the firsthand dissemination of his statements. (Comment, Electronic Surveillance in California: A Study in State Legislative Control (1969) 57 Cal.L.Rev. 1182, 1232.) Partly because of this factor, the Privacy Act has been read to require the assent of all parties to a communication before another may listen. (Id. at p. 1202.) Thus, the Legislature could reasonably have contemplated that section 631, subdivision (a), would prohibit the type of surreptitious monitoring of private conversations alleged here, and there is no indication that it did not. Indeed, it is probable that the Legislature viewed section 631 as a means of proscribing attempts to circumvent other aspects of the Privacy Act, e.g., by requesting a secretary to secretly transcribe a conversation over an extension, rather than tape recording it in violation of section 632." (Ribas v. Clark, supra, 38 Cal.3d at p. 361, 212 Cal.Rptr. 143, 696 P.2d 637.)
In Shulman v. Group W Productions, Inc. (1998) 18 Cal.4th 200, 74 Cal.Rptr.2d 843, 955 P.2d 469, the court discussed the expectation of privacy of accident victims who had sued television producers under common law tort doctrine for publication of private facts and intrusion. The nurse in charge of a helicopter-based medical team wore a remote microphone on her clothing, allowing her ongoing conversation with one of the victims to be heard during the victim's rescue from an overturned car and her subsequent transfer to a hospital in the helicopter.
*888 Reversing summary judgment, the court found "triable issues exist as to whether defendants tortiously intruded by listening to [the victim's] confidential conversations with Nurse Carnahan at the rescue scene without [the victim's] consent." Shutman, supra, 18 Cal.4th at p. 213, 74 Cal. Rptr.2d 843, 955 P.2d 469.) Pointing to the Privacy Act as possible support for the conclusion that the victim had a reasonable expectation of privacy in her conversations with the nurse, the court quoted from its opinion in Ribas: "`While one who imparts private information risks the betrayal of his confidence by the other party, a substantial distinction has been recognized between the secondhand repetition of the contents of a conversation and its simultaneous dissemination to an unannounced second auditor, whether that auditor be a person or a mechanical device. [Citation.] [¶] ... [S]uch secret monitoring denies the speaker an important aspect of privacy of communication the right to control the nature and extent of the firsthand dissemination of his statements.' (Ribas, supra, 38 Cal.3d at pp. 360-361 [212 Cal.Rptr. 143, 696 P.2d 637].)" (Shulman v. Group W Productions, Inc., supra, 18 Cal.4th at pp. 234-235, 74 Cal.Rptr.2d 843, 955 P.2d 469.)
In a footnote, however, the court was careful to deflect any suggestion that it was resolving the appellate court split over the meaning of confidentiality under section 632. "Neither in Ribas nor in any other case have we had occasion to decide whether a communication may be deemed confidential under Penal Code section 632, subdivision (c) when a party reasonably expects and desires that the conversation itself will not be directly overheard by a nonparticipant or recorded by any person, participant or nonparticipant, but does not reasonably expect that the contents of the communication will remain confidential to the parties. (Compare Coulter ... and Frio ... [both holding section 632 requires only that a party to the conversation reasonably expects it to be private from recording or eavesdropping] with O'Laskey ... [referring to expectation the conversation would not be `divulged' to third party] and Deteresa ... [reading O'Laskey ... as requiring expectation of secrecy of contents and predicting this court would adopt such interpretation of section 632].) We need not resolve that issue here, because under either interpretation of section 632, subdivision (c) triable issues exist whether [the victim] had a reasonable expectation of privacy in her communications to medical personnel." (Shulman, supra, 18 Cal.4th at p. 235, fn. 15, 74 Cal.Rptr.2d 843, 955 P.2d 469.)
Back in the body of the opinion, however, the court summarized: "Whether the circumstances of [the victim's] extrication and helicopter rescue would reasonably have indicated to defendants ... that [she] would desire and expect her communications to Carnahan and the other rescuers to be confined to them alone, and therefore not to be electronically transmitted and recorded, is a triable issue of fact in this case." (Shulman, supra, 18 Cal.4th at p. 235, 74 Cal.Rptr.2d 843, 955 P.2d 469.)
A year later, the Supreme Court decided Sanders v. American Broadcasting Companies (1999) 20 Cal.4th 907, 85 Cal. Rptr.2d 909, 978 P.2d 67. In Sanders, the plaintiff was employed as one of many telepsychics who gave readings to customers who telephoned the employer's 900 number. Each telepsychic took his or her calls in a three-sided cubicle, of which there were about 100 in the large work area. Defendant Lescht, an investigative reporter with defendant ABC, obtained employment as a telepsychic with plaintiffs employer and secretly videotaped and audiotaped her conversations with co-workers using a small hidden camera and microphone.
The plaintiff sued the defendants for violation of section 632 and the common *889 law tort of invasion of privacy by intrusion. The trial court bifurcated the causes of action and tried the section 632 count first. The jury was asked, "Did the communications of plaintiff ..., which were electronically recorded ..., include any communications carried on in circumstances which reasonably indicated that plaintiff ... desired such communications be confined to the parties thereto?" (Sanders v. American Broadcasting Companies, supra, 20 Cal.4th at p. 924, 85 Cal.Rptr.2d 909, 978 P.2d 67.) The jury answered affirmatively. Then the jury was asked, "Were the communications which gave rise to the `yes' answer to Question No. 1 made in circumstances in which the parties to the communication may reasonably have expected that the communications may have been overheard?" The jury answered yes again. (Ibid.) Based on the jury's second affirmative answer, the trial court entered judgment for the defendant on the section 632 cause of action. It denied defendants' motion to dismiss the remaining cause of action for intrusion, however, and allowed trial to go forward. The court of appeal reversed, holding that the jury's finding on the section 632 action barred any recovery for intrusion.
The Supreme Court disagreed with the appellate court and reinstated the cause of action for intrusion. It stated, "The evidence and argument indicating that the conversations could be overheard related only to possible overhearing by co-workers. There was no evidence the public was invited into the ... office, or that the office was visited by the press or other public observers on a routine basis or was ordinarily subject to videotaped surveillance by the mass media." (Sanders v. American Broadcasting Companies, supra, 20 Cal.4th at pp. 924-925, 85 Cal.Rptr.2d 909, 978 P.2d 67.) Relying on Shulman, the court explained, "[P]rivacy, for purposes of the intrusion tort, is not a binary, all-or-nothing characteristic. There are degrees and nuances to societal recognition of our expectations of privacy: the fact that the privacy one expects in a given setting is not complete or absolute does not render the expectation unreasonable as a matter of law." (Id. at p. 916, 85 Cal.Rptr.2d 909, 978 P.2d 67.) Confining its discussion to the common law intrusion tort,[2] the court held a person may reasonably expect privacy against the electronic recording of a communication, even though he or she had no reasonable expectation as to the confidentiality of the communication's contents. The court concluded, "In an office or other workplace to which the general public does not have unfettered access, employees may enjoy a limited, but legitimate, expectation that their conversations and other interactions will not be secretly videotaped by undercover television reporters, even though those conversations may not have been completely private from the participants' co-workers." (Id. at p. 911, 85 Cal. Rptr.2d 909, 978 P.2d 67.) Again citing Shulman, the court reiterated that "liability under the intrusion tort requires that the invasion be highly offensive to a reasonable person, considering, among other factors, the motive of the alleged intruder. [Citations.]" (Ibid.)
Shulman and Sanders demonstrate that, for purposes of the common law tort of intrusion, a person may have a reasonable expectation of privacy against electronic recording of a conversation even if he expects it to be divulged to others. But this is not the case for a statutory *890 claim under section 632.[3] The statutory language defines a confidential communication as one in which there is an objectively reasonable expectation by at least one party that the conversation will be confined to the participants. Thus, the statement in Coulter "that the subject matter might be later discussed has no bearing on whether section 632 has been violated" (Coulter v. Bank of America, supra, 28 Cal.App.4th at p. 929, 33 Cal. Rptr.2d 766) is too broad when taken out of context and applied to facts such as those before us.
The trial court followed this broad statement in Coulter when making evidentiary rulings and instructing the jury. On cross-examination, Nature's Best tried to ask Burns about his expectation of privacy during the conversation: "During the course of those conversations did you desire that the information be confined only to those individuals?" And later, "Isn't it true that during those conversations or that conversation with Mr. Groff, that you had no expectation that Mr. Groff or Lira would not divulge what was said during the taped conversation?" Relevancy objections to both questions were sustained.
The trial court instructed the jury, in accordance with the statutory language, that a communication is confidential under the statute if "any party to the communication desired it to be confined to the parties," but not if "circumstances were such that the parties ... could reasonably expect that the communication may be overheard or recorded." But it refused the instruction requested by Nature's Best which stated that a communication is not confidential unless "there was a reasonable expectation that the parties to the communication would not subsequently convey the information to anyone else." Instead, it told the jury, "Whether the parties could anticipate that the content of the communication may later be repeated to others has no bearing on whether the communication was confidential at the time it was made. If it was reasonable for any party to expect that the communication was confined to the parties at the time the communication was made, the communication is confidential."
Furthermore, the trial court instructed the jury: "It is objectively reasonable to expect that telephone conversations between business associates relating to ongoing ventures are private." The only telephone conversation at issue was the taped conversation between Burns and Groff. Because that conversation involved a potential lease transaction between two businesses, and the two companies had previously done business with each other, the jury could have interpreted the instruction as requiring a finding that the conversation was confidential.
These instructions and evidentiary rulings precluded the jury from considering whether Burns expected the taped conversation to be repeated to others, an essential element of the statutory claim, and suggested that its context rendered it confidential. This was error.

Disposition
The judgment is reversed. Nature's Best is entitled to costs of appeal.
WE CONCUR: BEDSWORTH, J., and MOORE, J.
NOTES
[1] All statutory references are to the Penal Code.
[2] Apparently, no one challenged the trial court's dismissal of the section 632 cause of action. The Supreme Court merely acknowledged the dismissal by referring to the statutory language in a footnote. (Sanders, 20 Cal.4th at p. 913, fn. 2, 85 Cal.Rptr.2d 909, 978 P.2d 67.)
[3] Two recent appellate court cases have addressed the distinction in the context of section 632. The Supreme Court has ordered one depublished (Marich v. QRZ Media, Inc. (July 2, 1999, B122834), 86 Cal.Rptr.2d 406) and has taken the other for review (Flanagan v. Flanagan (1999) 77 Cal.App.4th 122, 91 Cal.Rptr.2d 422, review granted Mar. 22, 2000, S085594).