Kathleen ROBERTS, Plaintiff,

v.

**AMERICABLE INTERNATIONAL, IN-CORPORATED,** Americable International Moffett, Incorporated, Michael E. Sweatman and Does 1 To 50, inclusive, Defendants.

No. CIV S–94–0646–DFL–GGH.

United States District Court,
E.D. California.

April 14, 1995.

Tod Michael Ratfield, Walnut Creek, CA, for plaintiff.

Kimberly A. Worley, Littler, Mendelson, Fastiff, Tichy and Mathiason, Sacramento, CA, for defendants.

## MEMORANDUM AND ORDER

HOLLOWS, United States Magistrate Judge.

Previously pending on this court's law and motion calendar for March 2, 1995 was plaintiff Kathleen Roberts' motion to compel the deposition of defendant Michael E. Sweatman and Sweatman's motion to stay his deposition and for a protective order. Also pending was defendant Americable's related motion to compel production.[1] The parties timely filed a joint stipulation regarding their discovery disagreements pursuant to E.D.Cal.Local Rule 251 on February 23, 1995. The court issued an order from the bench at the March 2nd hearing resolving the discovery disputes. The discussion here memorializes the order and the reasons for its issuance.

## BACKGROUND

Plaintiff Kathleen Roberts ("Roberts") was employed by defendants Americable International, Inc. and Americable International Moffett, Inc. (hereafter collectively "Ameri-

---

**1.** As explained below, Americable seeks to have the court compel production of tape recordings, the request for which was made at plaintiff's deposition. In all other respects, Americable has withdrawn its motion to compel production of documents due to resolution of the issues therein. The court will therefore not address aspects of the withdrawn motion.

cable") as an office manager from November 25, 1991, to June 11, 1993. Defendant Michael E. Sweatman ("Sweatman") was at all relevant times employed by Americable in a supervisory capacity. He was also Roberts' supervisor.

Roberts alleges that on or about April 30, 1993, and continuing thereafter, Sweatman began to sexually harass her, both verbally and physically, in violation of state and federal law. Cal.Gov't Code § 12940, et seq.; 42 U.S.C. § 2000e, et seq. Roberts also claims that Americable further violated the law by terminating her employment on June 11, 1993, in retaliation for her reporting Sweatman on June 9, 1993. Cal.Gov't Code § 12940(f); 42 U.S.C. § 2000e–3(a).

On March 11, 1994, Roberts filed her state and federal law claims in the Superior Court of California, Solano County. Roberts claimed unlawful discrimination based upon sex or sexual harassment, sexual battery, wrongful termination in breach of an implied contract and the covenant of good faith and fair dealing, breach of an express, written employment contract, false imprisonment, and intentional infliction of emotional distress. On April 28, 1994, defendants removed the suit to federal court pursuant to 28 U.S.C. §§ 1331, 1441(a)–(c), 1446.

The instant disputes were initiated by Roberts' motion to compel Sweatman's deposition, Sweatman's refusal to appear at his deposition prior to the production of tape recordings relevant to this action, and Americable's informal request for production of the tape recordings at issue made at Robert's deposition. On February 1, 1995, Roberts noticed Sweatman's deposition for February 15, 1995. Sweatman in turn filed motions to stay the February 15th deposition and for a protective order.

Sweatman's main concern was that Roberts possessed tapes of conversations between Roberts and himself, and between Roberts and other Americable employees, that she would not agree to suppress or disclose to Sweatman. Roberts conceded at her deposition that she had secretly recorded the in-person conversations at her work station via a voice activated recorder without the other individuals' knowledge. Defendants only became aware of the existence of the tapes at Roberts' deposition on October 31, 1994. The February 15th deposition never took place pending resolution of the instant motions.

■ Although the nominal controversy involves Sweatman's refusal to attend his deposition, the primary controversy revolves around what to do with the tape recordings. As a first alternative, Sweatman and Americable (hereafter, collectively "Sweatman" unless otherwise indicated)[2] seek a protective order (suppression) to prevent Roberts from referring to the tapes at all during his deposition or any other part of the litigation.[3] Sweatman claims use of the tapes is barred because they were illegally obtained under the California Privacy Act, Cal.Penal Code § 630, et seq. Alternatively, Sweatman asks for a stay of his deposition until his motion to compel the production of these tapes has been decided. If production of the tapes is ordered, Sweatman requests 15 days to review the conversations before submitting to the deposition.

Roberts argues that Fed.R.Civ.P. 30 entitles her to depose Sweatman without regard to the existence of collateral discovery dis-

**2.** The local litigation culture often utilizes informal requests to produce documents which are made at depositions, and most times these informal requests are honored. Nevertheless, Americable's informal request for production of documents made at a deposition is not recognized as an appropriate discovery request under the federal rules, i.e., such a discovery vehicle does not exist under the Federal Rules of Civil Procedure. Americable's motion to compel is thus inappropriate and is denied for this reason. However, Americable does have an interest in the outcome of the Sweatman motions, and no party has objected to Americable's standing in these dis-

covery disputes. The court will accept Americable's arguments made at hearing on the Sweatman matters; however, the court will simply refer to "Sweatman" when referencing all defendants' arguments.

**3.** The term "suppression" is more appropriate than "protective order" in that the tape recording actions took place prior to the commencement of any litigation. Thus, Sweatman does not seek protection from litigation abuse, but rather seeks suppression of pre-litigation acquired evidence.

putes. Consequently, Roberts moves for an order to compel his deposition and to preclude defendants from engaging in any discovery until his deposition has been taken. Roberts contends that Sweatman's deposition testimony would be "colored" if he had the opportunity to listen to the tapes prior to his deposition. Roberts also seeks an order for monetary sanctions against Sweatman and his counsel for failing to participate in the taking of Sweatman's deposition, and for the expense of having to bring this motion to obtain Sweatman's deposition after it was duly noticed.

Finally, although not directly raised by Roberts in her portion of the stipulation, but implicitly raised in Sweatman's portion of the stipulation, Roberts objects to producing the tapes in question on several grounds. First, she claims that their production would violate her Constitutional right to privacy. Second and third, she contends that the attorney-client privilege and the work product doctrine preclude disclosure of the tapes at this time.

## DISCUSSION

These motions turn on whether or not the tapes are protected from disclosure. Sweatman's motion to preclude use of (suppress) the tapes will be addressed first. Sweatman's alternative request to review the tapes and Robert's concerns regarding production will then be analyzed.

### I. *Defendant Sweatman's Motion to Exclude Evidence*

Sweatman first moves for a protective order to exclude the tapes because they were illegally obtained pursuant to Cal.Penal Code § 630, et seq. The key to resolution of the issue regarding the propriety of the tape recordings is the understanding of whether state or federal law applies. However, the court will first compare the two statutory schemes to determine whether there is a meaningful difference in the two bodies of law, and if so, the court will apply the correct rule of law.

### A. *Sweatman's Privacy Rights Under Cal.Penal Code § 630, et seq.*

Cal.Penal Code § 632(a) prohibits the intentional recording of confidential communications without the consent of *all* parties. *Coulter v. Bank of America,* 28 Cal.App.4th 923, 928–29, 33 Cal.Rptr.2d 766, 770 (1994) (affirming trial court's grant of summary judgment in favor of co-workers because Coulter violated their privacy rights by secretly taping 160 of their confidential conversations without co-workers' consent). A communication is confidential as long as the circumstances reasonably indicate that *any* party expects the communication to be confined to the parties. Cal.Penal Code § 632(c); *Coulter,* 28 Cal.App.4th at 929, 33 Cal.Rptr.2d at 770; *Frio v. Superior Court,* 203 Cal.App.3d 1480, 1488, 250 Cal.Rptr. 819, 822 (1988) (affirming exclusion of notes of illegally taped phone conversations, but issuing writ of mandamus to allow testimony based on recollection refreshed by said notes).

Sweatman argues that Roberts violated California law because she secretly recorded conversations at her work station without his knowledge. Thus, all parties never consented to the recording. Furthermore, defense counsel asserted "it is reasonable to assume that [Sweatman] believed [the conversations] to be confidential." (Stipulation at 8–9.) In all probability, plaintiff violated state law when she surreptitiously tape recorded her supervisor and others at the workplace.

### B. *Federal Law*

The Omnibus Crime Control and Safe Streets Act (the "Act") is the federal law that regulates the interception of oral communication. 18 U.S.C. §§ 2510, et seq. Section 2511(1)(a) prohibits the intentional interception of any oral communication where the parties have a reasonable expectation of privacy and the circumstances justify such an expectation. 18 U.S.C. § 2511(1)(a) (1988); *Matter of John Doe Trader Number One,* 894 F.2d 240 (7th Cir.1990) (affirming finding that trader did not have reasonable expectation that his conversations in foreign currency pit of mercantile exchange were private, thus, recordings by federal agent wearing a

hidden microphone did not violate the Act.) Section 2510(4) defines intercept as the "aural or other acquisition of ... any oral communication through use of any electronic, mechanical or other device."

However, § 2511(2)(d) provides an exception to the prohibition against recording oral communications, and specifies that the interception of oral communications is not unlawful under this chapter where a party to the conversation is either the one who has intercepted the conversation or who has consented to the interception, and the interception is not for the purpose of committing any criminal or tortious act. *See, Thomas v. Pearl,* 998 F.2d 447 (7th Cir.1993) (affirming trial court's grant of summary judgment in favor of defendant, assistant basketball coach, because when he surreptitiously taped plaintiff's phone conversations, his purpose was neither criminal nor tortious and therefore his actions fell within exception of § 2511(2)(d)).

 In the instant case, there is no evidence, nor even any allegations that Roberts' purpose in tape recording her supervisor was either criminal or tortious outside any allegations of violation of the California privacy laws. Roberts alleges that she tape recorded her supervisor to protect herself, and/or gather evidence of her supervisor's improper conduct. The facts do not show at this point that she tape recorded to extort or blackmail her supervisor or company, nor do the facts presently show that she engaged in tape recording to cause emotional distress. Sweatman might argue that because California recognizes that invasion of privacy by non-consensual recording is a tort, *Coulter, supra,* Roberts' action is *per se* tortious, and hence the federal "one party consent" rule cannot apply.[4] However, the court will not interpret the federal limited permission to intercept oral conversations granted by § 2511(2)(d) to be negated by state law which itself may invalidate such interception, and which itself may render such interception tortious. Clearly, Congress must have had in mind when enacting the "one party consent" exception pertinent here that state law regarding tape recording of conversations might be more strict than federal law.[5] Nevertheless, Congress chose to permit a "one party consent" rule, and it is therefore unwise to interpret this permission in *federal* cases in such a manner that it is automatically voided by the mere presence of a stricter state law. To so hold would be to state that Congress intended to have state law apply in federal actions which would otherwise be governed by a federal statute on point. Such an unusual result must be expressly provided by Congress and cannot be read by mere implication. Moreover, as discussed in the following section, federal courts have applied federal law on conversation recording to the exclusion of state law when the issue of tape recording impropriety has been raised in actions based on *federal* law. Thus, the "tortious purpose" referenced by the federal permission/exception must be a tortious purpose *other than* the mere intent to surreptitiously record an oral conversation.[6]

### C. *Only Federal Law Is To Be Applied*

 Although Roberts apparently obtained the tapes in violation of California state law, as discussed above, the Ninth Circuit has consistently held that such evidence is admissible in federal court proceedings when obtained in conformance with federal law and without regard to state law. *United States v. Adams,* 694 F.2d 200, 201–02 (9th Cir.1982). In *Adams,* the court affirmed the

---

**4.** The Ninth Circuit has recognized in dicta that "having one's personal conversations secretly recorded may well infringe upon the right to privacy guaranteed by the California Constitution." *Rattay v. City of National City,* 36 F.3d 1480, 1483 *modified,* 51 F.3d 793 (9th Cir.1994).

**5.** *See,* the discussion of legislative history for the federal act contained in *People v. Conklin,* 12 Cal.3d 259, 114 Cal.Rptr. 241, 522 P.2d 1049 (1974).

**6.** Of course, federal law will not control in state court in the face of a state statute governing the tape recording of private conversations when that state law is stricter than the federal law. *People v. Conklin, supra; Warden v. Kahn,* 99 Cal.App.3d 805, 810, 160 Cal.Rptr. 471, 474 (1979). The federal statute is only preemptive in those situations where there is no state law on the subject of conversation interception, or the state law is less strict.

admission of videotapes of meetings and tape recordings of telephone conversations between an undercover customs agent and convicted child pornography marketers. The interceptions were lawful, consensual wiretaps under 18 U.S.C. § 2511(2)(c) regardless of their apparent illegality under Hawaii state law. *Id.* (citations omitted). *See also, United States v. Hall,* 543 F.2d 1229, 1232 (9th Cir.1976).

▆▆▆ Although the Ninth Circuit's holding was made in the context of a criminal proceeding, it is equally applicable to civil proceedings. Sweatman's argument has consistently been that his state law "privacy privilege" has been invaded by Roberts' actions. However, as previously noted, this present action is based on federal law as well as state law. It is well settled that federal law applies to privilege claims brought in actions based in whole or in part on federal law. *Pagano v. Oroville Hospital,* 145 F.R.D. 683, 687 (E.D.Cal.1993) citing *Kerr v. U.S.D.C. (N.D.Cal.),* 511 F.2d 192, 197 (9th Cir.1975), *aff'd.,* 426 U.S. 394, 96 S.Ct. 2119, 48 L.Ed.2d 725 (1976); *Heathman v. U.S.D.C. (C.D.Cal.),* 503 F.2d 1032, 1034 (9th Cir.1974). State law may be a guide for decision, but it is not binding. *Pagano,* 145 F.R.D. at 688. Also, state privilege law may not be applied at all if federal law on the

subject of the privilege is inconsistent with state law. *Id.* Here, the federal law permitting one party to tape record the oral conversation of another without consent of the recorded party, if not performed for the purpose of committing a tort, is inconsistent with state law. Therefore, state law may not even be a guide for decision in the context of this case.

Sweatman's motion to preclude (suppress) use of the tape recorded statements in this litigation must be denied. The court will now decide whether plaintiff Roberts shall produce the tapes for use by Sweatman.[7]

## II. *Production of Tapes*

▆▆▆ Sweatman also asserts that Roberts seeks an unfair advantage by taking his deposition before he has had an opportunity to review the tapes. Sweatman cites California authority for the proposition that a party cannot make one-sided use of the other party's recorded statements merely because it noticed the deposition before the other party requested production of the recorded statements. *Poeschl v. Superior Court,* 229 Cal. App.2d 383, 40 Cal.Rptr. 697 (1964). While *Poeschl* .obviously does not bind this court, Sweatman's arguments that he would be unfairly prejudiced by his inability to review

---

7. The court has considered whether application of the well known exclusionary rule which bars the admission of evidence that was obtained in violation of the Fourth Amendment in criminal proceedings may be applied in civil proceedings. *See, Wong Sun v. United States,* 371 U.S. 471, 484, 83 S.Ct. 407, 416, 9 L.Ed.2d 441 (1963). In the civil context, application of the exclusionary rule requires balancing the cost of excluding often probative evidence with the benefit of deterring future unlawful government conduct. *INS v. Lopez–Mendoza,* 468 U.S. 1032, 1041, 104 S.Ct. 3479, 3484–85, 82 L.Ed.2d 778 (1984) (*quoting United States v. Janis,* 428 U.S. 433, 446, 96 S.Ct. 3021, 3028, 49 L.Ed.2d 1046 (1976), *Gonzalez–Rivera v. I.N.S.,* 22 F.3d 1441, 1448 (9th Cir.1994)). The Supreme Court held in *Lopez–Mendoza* that the situation must involve "egregious violations of Fourth Amendment or other liberties" to warrant application of the rule in the civil context. *Lopez–Mendoza,* 468 U.S. at 1050, 104 S.Ct. at 3489. In both *Lopez–Mendoza* and *Janis,* the Supreme Court held that the exclusionary rule did not apply to either a purely civil deportation hearing or to a civil tax assessment proceeding. *Lopez–Mendoza,* 468 U.S. at

1050–51, 104 S.Ct. at 3489–90, *Janis,* 428 U.S. at 458–60, 96 S.Ct. at 3034–35. *But see One 1958 Plymouth Sedan v. Commonwealth of Pa.,* 380 U.S. 693, 700–02, 85 S.Ct. 1246, 1250–52, 14 L.Ed.2d 170 (1965) (holding exclusionary rule applied to civil forfeiture proceeding which is quasi-criminal in nature).

The Fourth Amendment protections extend only to government action, however. *See Camara v. Municipal Court,* 387 U.S. 523, 528, 87 S.Ct. 1727, 1730, 18 L.Ed.2d 930 (1967). In *Camara,* the Court noted that it had reaffirmed in countless decisions the purpose of Fourth Amendment. This purpose is "to safeguard the privacy and security of individuals against arbitrary invasion by government officials." *Id.*

Thus, there is substantial doubt in this litigation between private parties that this court could suppress, or otherwise grant an exclusionary protective order for, evidence which has been acquired outside of the litigation process. However, because of this court's finding that the tape recording at issue was *not* unlawful from a federal perspective, the court need make no final resolution of the issue.

the tapes prior to his deposition are persuasive.

First of all, notions of fairness would compel disclosure of at least the tapes involving Sweatman prior to Sweatman's deposition. This situation may also be analogized to Federal Rule of Criminal Procedure 16(a)(1)(A). Rule 16(a)(1)(A) requires that upon request, the Government must disclose and make available to the defendant "any relevant written or recorded statements made by defendant, or copies thereof" which are within the government's possession, custody or control. Fed.R.Crim.P. 16(a)(1)(A). While Rules of Criminal Procedure do not apply to this civil case, the rationale for this rule is noteworthy for application in this civil case. When it expanded the scope of the rule in 1991, the Advisory Committee noted that Rule 16(a)(1)(A) recognizes defendant's proprietary interest in statements he has made regardless of prosecution's intent to use them. Fed.R.Crim.P. 16(a)(1)(A) Advisory Committee's Note. It seems that a civil party, whether plaintiff or defendant, has a similar proprietary interest in any relevant written or recorded statements he or she has made. Thus, the court concludes that in the context of this litigation, Sweatman has a proprietary right to the taped conversations at least as much as Roberts.

Moreover, plaintiff Roberts acquired all tapes in a less than forthright manner. Although the tapes were made in a manner that avoids violation of federal law, the court concludes that defendant Sweatman and other Americable employees, whose speech has been secretly taped recorded, should not be subjected to a deposition, the partial purpose of which is simply to create inconsistencies or otherwise set up impeachment in Sweatman's testimony, without Sweatman and Americable having had a chance to review the tapes—the same opportunity that Roberts had prior to her deposition.

The court further finds that Robert's "priority of discovery request" argument fails in light of Federal Rule of Civil Procedure, Rules 26(c) and (d). Roberts contends that since her notice of deposition predates Sweatman's formal objection to having his deposition taken without access to the tapes, she has a right to go forward with the deposition. Not only does Roberts ignore Americable's and Sweatman's informal requests for the tapes which predated her notice of Sweatman's deposition, Roberts also ignores the authority of the court to control the sequence of discovery to promote fair and just litigation practices.

Rule 26(c) permits the court to enter what orders are necessary to protect a party from "annoyance" and "oppression." *See also,* 8 C. Wright, A. Miller & R. Marcus, *Federal Practice and Procedure,* § 2047 (West 1994) (stating that 1970 amendments to rule make explicit court's power to issue protective orders under Rule 26(c)(2) to vary discovery sequence and timing). In light of the circumstances, it should appear clear by now that the court views the taking of Sweatman's deposition prior to his having an opportunity to review all tapes as annoying or harassing at the very least. Also, Rule 26(d) specifies that "[u]nless the court upon motion, [and] for the convenience of parties and witnesses and in the interests of justice, orders otherwise, methods of discovery may be used in any sequence...." Fed.R.Civ.P. 26(d). Obviously, under the express provisions of Rule 26(d), the court can order the production of the tapes to precede Sweatman's deposition.

Thus, absent an overriding privilege held by Roberts, discussed *infra,* the court finds that in the interests of justice, Sweatman should have the opportunity to review all tapes prior to testifying at his deposition. He should be allowed this opportunity despite the fact his deposition was noticed prior to his formal request for the tapes.

Roberts implicitly claims three privileges or protections to prevent disclosure of the tapes: a privacy right under the California Constitution, the attorney-client privilege, and the work product doctrine. Roberts did not actually assert these claims in the papers she submitted to the court. Rather, Sweatman acknowledged the objections in his portion of the stipulation. Although not properly asserted,[8] the court will grant Roberts the

---

**8.** Plaintiff did not comply with Fed.R.Civ.P. 26(b)(5) in asserting her privileges. Rule

benefit of the doubt and address her privilege and privacy claims.

### A. *Roberts' Right to Privacy*

■ Roberts first asserts that *her* Constitutional right to privacy will be violated by turning the tapes over to the defense. The federal Constitution implicitly recognizes a right to privacy that requires a balancing test to be utilized whenever discovery requests intrude on the privacy interests of a party or non-party. *Pagano v. Oroville Hospital*, 145 F.R.D. 683, 698–99 (E.D.Cal.1993). Article 1, § 1 of the California Constitution expressly provides for a privacy right. However, the court need not make any lengthy balancing analysis because Robert's privacy rights are not significantly implicated by a production of the tapes that she caused to be created.

It must seem odd, even to Roberts, that the surreptitious recording of the conversations of her supervisor, Sweatman, and other employees, which certainly impinges upon *their* privacy rights, violates the privacy rights of the person doing the recording when that person is asked to produce the tapes in discovery. Roberts has not asserted that she does not plan to use the tapes in this litigation; it is clear that she does. Roberts does not assert that she spoke of some highly confidential, private material at the time she was recording Sweatman or other employees. Even if she did, any conceivable balancing process would require the tapes to be produced in light of the fact that very probative evidence is purportedly contained on the tapes, and Roberts intends to utilize the tapes in this litigation.

Therefore, the court finds Robert's privacy objections not to have merit.

### B. *Attorney–Client Privilege*

■ Roberts next asserts that attorney-client privilege precludes production of the tapes. The Ninth Circuit has specified eight elements essential to federal attorney-client privilege in *Admiral Ins. v. United States*

26(b)(5) requires that a party who is withholding information on the basis of privilege or as protected trial preparation materials make the claim expressly and describe the nature of the things in

*Dist. Court for Dist. of Ariz.*, 881 F.2d 1486, 1492 (9th Cir.1989).

The privilege is applicable:

(1) Where legal advice of any kind is sought

(2) from a professional legal advisor in his capacity as such, [then]

(3) the communications relating to the purpose,

(4) made in confidence

(5) by the client,

(6) are at this instance permanently protected

(7) from disclosure by himself or by the legal advisor

(8) unless the protection be waived.

*Id.*

■ In the case at bar, the tapes in question do not contain communications by Roberts for the purpose of seeking legal advice. Rather, Roberts' purpose in taping the conversations was presumably to have a record of the allegedly harassing conversations and to acquire other evidence. Consequently, the attorney-client privilege does not apply. Roberts' counsel asserted at the hearing, however, that Roberts may have taped the conversations on the advice of prior counsel. If true, this fact still does not support protection of the tapes under the attorney-client privilege. While the actual advice of counsel may retain a privileged status (although any remaining privilege may well have been waived by Roberts' assertions herein), the acts themselves taken because of such advice do not come within the privilege. Rather, this argument might relate to the work product privilege with regard to the tapes themselves.

### C. *Work Product Protection*

■ Federal law provides that the work product doctrine is a generally qualified immunity and as such, a party may discover otherwise protected materials if substantial need or undue hardship is shown. *Admiral*

such a way as to enable other parties to assess the applicability of the privilege or protection. However, no party is unaware of the tapes or the type of information on the tapes.

*Ins. v. U.S. District Court for Dist. of Ariz.,* *supra,* 881 F.2d at 1494. Except in extraordinary circumstances, however, a party may not obtain work product that reveals an attorney's mental processes, conclusions, opinions or legal theories. Fed.R.Civ.P. 26(b)(3). This latter work product is at times referenced as an absolute immunity. However, there are few things absolute in the law, and work product immunity, even of an attorney's mental impressions, is not one of them. *Holmgren v. State farm Mut. Auto. Ins. Co.,* 976 F.2d 573, 577 (9th Cir.1992). *See also, Admiral Ins. v. U.S. Dist. Court for Dist. of Ariz., supra* (finding that there are special protections for work product that involves the attorney's mental impressions). The work product rule also covers the work product of non-attorneys which is prepared "in anticipation of litigation or preparation for trial by or for a party or any representative acting on his behalf." Fed.R.Civ.P. 26(b)(3) Advisory Committee Notes. The court must now determine whether the tapes in question are protected from disclosure by the work product doctrine.

Roberts' counsel is in rather a delicate position, and his equivocal assertion of advice of counsel at hearing demonstrates this fact. Counsel herein is unwilling to concede that Roberts' previous counsel advised his client prior to the commencement of this litigation to violate California law, thereby subjecting his client and previous counsel to a potential tort action in state court based on violation of state law. Yet, counsel desires a ruling on work product immunity based on advice of counsel without an evidentiary basis. Roberts' assertion of work product immunity should fail for this reason alone.

Assuming for the moment that counsel did so advise his client, and that pre-litigation activity of the sort described here is encompassed by work product immunity, this court would find the fruit of that advice, the actual tape recordings, to be subject to a weak qualified immunity. However, from the discussion in previous sections, Sweatman clearly has a substantial need for his own statements in this litigation, as well as other employees that were tape recorded. Aside from his memory, which may have dimmed somewhat at this time, Sweatman has no ability to acquire the precise wording of his taped statements. Neither he nor Americable have any realistic means by which to accurately reconstruct the statements of other Americable employees that were taped.

Moreover, the much more protected attorney thought process/mental impression work product is not involved here. Roberts' counsel cannot contend that the tape recordings reveal *his* mental processes or that of previous counsel. The tape recordings only reveal the thought processes of the conversants, and Roberts' attorneys were not at any time a conversant.

Disclosure of all tape recordings at issue here is in order.

**D. Sanctions**

■■■ Roberts also seeks monetary sanctions against Sweatman and his counsel for failing to participate in the agreed upon discovery plan under Fed.R.Civ.P. 37(g), and for the expenses of having to bring this motion to compel Sweatman's deposition under Fed.R.Civ.P. 37(a)(4).

Firstly, it should be noted that Roberts cites Fed.R.Civ.P. 37(g) in support for her position that sanctions are in order for Sweatman's failure to *participate* in the agreed upon discovery plan. However, Rule 37(g) addresses the repercussions of a party's failure to participate in the *framing* of a discovery plan. Thus, the rule is not the appropriate authority for this motion for sanctions.

Most significantly, Sweatman's application for a protective order and his opposition to Roberts' motion to compel his deposition prior to production of the tapes was substantially justified for the reasons discussed above. Fed.R.Civ.P. 37(a). Since Sweatman's opposition was justified, sanctions should not be imposed.

**CONCLUSION**

At the conclusion of the hearing in this matter, the court orally denied Sweatman's and Americable's motion to preclude use of the tapes in this litigation. The court further granted Sweatman's motion to stay his February 15, 1995, deposition until Roberts pro-

duces the tapes. The parties thereafter agreed that Sweatman's deposition would commence on April 3, 1995. However, Roberts was ordered to provide all relevant tapes or copies thereof and/or any written transcripts prepared from these tapes to *all* defendants, including Americable, by March 15, 1995.

The court further ordered that the following protective order would apply to all tapes or transcripts produced.

1. Only parties to this action, and their attorneys, may listen to all of the tapes, or read all of the transcripts prepared therefrom. In the interest of privacy, non-parties may only listen to or read transcripts of their own conversations, but not those of anyone else. Therefore, before any non-party listens to (or reads a transcript of) a tape of his or her conversation with plaintiff, communications of other individuals reflected on the tape (or transcript) must be redacted.

2. The tapes or transcripts shall be designated as "Confidential Material." Such designation shall be made by marking the material prior to use in this litigation as follows: "Confidential Material Subject To Protective Order."

3. Confidential Material shall be used solely in connection with this litigation and the preparation and trial of this case, or any related appellate proceeding, and not for any other purpose, including any other litigation, until further order of this court.

Finally, the court denied Robert's motion for sanctions.

Based on the reasoning contained herein, the court's oral orders are confirmed.

IT IS SO ORDERED.