**PRO BILLIARDS TOUR ASSOCIATION, INC., Plaintiff,**

v.

**R.J. REYNOLDS TOBACCO COMPANY, Defendant.**

**No. 1:98CV00379.**

United States District Court, M.D. North Carolina, Winston–Salem Division.

June 18, 1999.

Mack Sperling, Jennifer Van Zant, Brooks, Pierce, McLendon, Humphrey & Leonard, Greensboro, NC, for Pro Billiards Tour Association, Inc.

W. Andrew Copenhaver, David Alan Shirlen, Womble Carlyle Sandridge & Rice, Winston–Salem, NC, for R.J. Reynolds Tobacco Company.

## ORDER

ELIASON, United States Magistrate Judge.

Plaintiff Pro Billiards Tour Association, Inc. ("PBTA") seeks a protective order pursuant to Fed.R.Civ.P. 26(c)(2). That rule authorizes a court to order "that the disclosure or discovery may be had only on specified terms and conditions, including a designation of the time or place." Underlying the motion is an audiotape recording made at a meeting between the parties on March 13, 1997.

Plaintiff tape recorded the meeting with the knowledge of defendant R.J. Reynolds Tobacco Company's ("RJR") representatives. Defendant has submitted a Rule 34 request for production of the tape. Plaintiff does not

oppose that request. However, plaintiff seeks a protective order that it not be required to produce the recording until after it has had an opportunity to depose the RJR individuals who were present at the meeting. Plaintiff argues that the tape should be withheld until after the deposition of the RJR representatives so that it can have their unrefreshed and unrehearsed recollection of what was stated at that meeting.

Defendant counters that the tape constitutes substantive evidence,[1] not just impeachment material, and that its representatives are entitled to review substantive evidence prior to their depositions. It also raises two "fairness" arguments. First, it suggests that PBTA may have failed to tape record the entire meeting and that it needs to verify this before subjecting its representatives to a potentially misleading examination.[2] Second, defendant asserts that it would be unfair for plaintiff to be able to test defendant's representatives' memory without their benefit of review of the tape, when plaintiff's principal representative will not be subjected to the same test. Plaintiff's principal has already reviewed the tape, and plaintiff used it to prepare the complaint.

■ Disputes involving the timing of specific depositions in relation to other discovery fall directly within the provisions of Rule 26(c)(2), although other rules do touch on the issue.[3] The burden of showing good cause for a protective order rests on the

party requesting relief. *Brittain v. Stroh Brewery Co.*, 136 F.R.D. 408 (M.D.N.C.1991). Protective orders sought under Rule 26(c)(2) which seek to regulate the terms, conditions, time or place of discovery are wholly within the court's discretion. *Hendrick v. Avis Rent A Car System, Inc.*, 916 F.Supp. 256, 260 (W.D.N.Y.1996). This is as it should be because such relief has the least finality or irreversible consequences compared to other provisions of Rule 26(c) which allow the total prohibition of discovery or allow discovery only by certain methods.

■ Plaintiff relies on a line of cases wherein courts have held that a plaintiff's statement or a surveillance tape of the plaintiff need not be turned over to the plaintiff until after the plaintiff's deposition. These cases base the decision of delayed production on preserving the impeachment value of the statement or surveillance tape and, therefore, delay production until after the plaintiff commits himself or herself in a deposition. *See generally* 8 Charles Alan Wright, *et al.*, *Federal Practice and Procedure* § 2015, pp. 211–212, 219–220 (1994).[4] This is an important consideration.

Unfortunately, evidence rarely fits nicely within a single category, such as impeaching evidence. For example, a party's statement, such as one collected by an accident investigator after the incident, is normally considered impeachment evidence. *See Torres–Paulett v. Tradition Mariner, Inc.*, 157

---

1. Plaintiff alleges that the tape contains the terms of an oral contract binding on both parties.

2. Defendant notes that plaintiff's complaint contains numerous quotation marks, apparently coming from the tape recording, but there is no indication that the statements came from a transcript of that tape. Defendant fears cross-examination based on unverified, out-of-context quotations will mislead its representatives.

3. Fed.R.Civ.P. 30(b)(1) arguably could be used to resolve the controversy because it provides that a party desiring a deposition may give "reasonable notice in writing" to the other parties. Defendant could argue that a notice of deposition in this case would not be reasonable until after plaintiff has turned over the audiotape. However, the issue here is not the "reasonableness" of the time to prepare for the deposition, but rather the timing of the deposition in relation to other discovery devices.

Likewise, Fed.R.Civ.P. 26(d) specifically governs the timing and sequence of discovery, but its focus is on the entire discovery context by establishing the rule that, absent a court order to the contrary, there is no priority of discovery with respect to either parties or discovery methods. 8 Charles Alan Wright, *et al.*, *Federal Practice and Procedure* § 2047 (1994).

4. Plaintiff's statement—8 Wright, *et al.*, *supra*, § 2027 n. 14, at p. 412 (1994 & Supp.1999); *Torres–Paulett v. Tradition Mariner, Inc.*, 157 F.R.D. 487 (S.D.Cal.1994) (collecting cases).

Surveillance taping of plaintiff—*Gibson by Gibson v. National R.R. Passenger Corp.*, 170 F.R.D. 408, 410 (E.D.Pa.1997) (collecting cases); *Blount v. Wake Elec. Membership Corp.*, 162 F.R.D. 102, 104 (E.D.N.C.1993) (citing 8 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § [2]015).

F.R.D. 487 (S.D.Cal.1994). However, at the same time, it constitutes an admission by a party-opponent, which is substantive evidence. *See* Fed.R.Evid. 801(d)(2); 8 Wright, *et al., supra,* § 2015, at p. 212.

Like a party's statements, surveillance tapes often constitute both impeachment and substantive evidence.[5] *Chiasson v. Zapata Gulf Marine Corp.,* 988 F.2d 513 (5th Cir.), *reh'g denied,* 3 F.3d 123, 124 (5th Cir.1993), *and cert. denied,* 511 U.S. 1029, 114 S.Ct. 1536, 128 L.Ed.2d 189 (1994) (impeachment value of surveillance tape minimal compared to value as to substantive issue of extent of plaintiff's injury); *accord Smith v. Diamond Offshore Drilling, Inc.,* 168 F.R.D. 582, 586 (S.D.Tex.1996); *Wegner v. Cliff Viessman,* 153 F.R.D. 154, 158–59 (N.D.Iowa 1994).

Substantive, as opposed to impeachment, evidence is clearly subject to discovery. *Id.;* and 8 Wright, *supra,* § 2015, at p. 212. Its very existence must be made known and, even if protected work product, its contents must be revealed if it will be used at trial or if the opposing party has a substantial need for it. *Fisher v. National R.R. Passenger Corporation,* 152 F.R.D. 145, 151–156 (S.D.Ind.1993); *Wegner,* 153 F.R.D. at 159–160, *Dodson v. Persell,* 390 So.2d 704, 707–708 (Fla.1980). *See also* n. 4, *supra.*

Courts which have noticed the presence of substantive elements in otherwise impeaching evidence may still delay production until after a deposition which fixes a party's testimony and preserves the impeachment value of the evidence. *Smith,* 168 F.R.D. at 587; *Dodson,* 390 So.2d at 708. However, where the substantive value of the evidence predominates, production has not been delayed until after the deposition. *Frazier v. Southeastern Pennsylvania Transp. Authority,* 161 F.R.D. 309, 318–319 (E.D.Pa.1995) (defendant's surveillance of plaintiff—civil rights action); *Roberts v. Americable Intern., Inc.,*

883 F.Supp. 499, 505 (E.D.Cal.1995) (civil rights); *Robertson v. National R.R. Passenger Corporation,* No. CIV. A. 98–1397, 1999 WL 199093 (E.D.La. April 8, 1999) (civil rights); *but see Sherrell Perfumes, Inc. v. Revlon,* 77 F.R.D. 705 (S.D.N.Y.1977) (antitrust, no abuse of discretion to delay production until defendant deposed, where plaintiff could be redeposed after defendant obtains tapes).

The above case law suggests, and the Court is persuaded, that classifying evidence as to its relative importance as either impeachment or substantive evidence provides the best criteria for determining whether to delay production of evidence until after a party has been deposed. To the extent the substantive value of the evidence outweighs its impeachment value, the Court will not delay production pending the taking of a deposition.

The nature of substantive evidence supports this more even-handed treatment. "Substantive evidence is that offered to establish the truth of a matter to be determined by a trier of fact." *Chiasson,* 988 F.2d at 517. Unless a fact is undisputed, such evidence will likely have corroborating and/or impeaching value for both a party and its opponent. In the instance of a recording of fact events, surreptitious or not, the real value of the recording is not in impeaching a witness, but in the facts and issues determined by the recording. The memory of a witness as to what was said is of lesser importance. *Tury v. Superior Court,* 19 Ariz.App. 169, 171, 505 P.2d 1060, 1061 (1973). Impeachment evidence, on the other hand, serves the purpose of discrediting only one of the parties through the purifying light of cross-examination. Because substantive evidence directly effects both parties, each has the same need to subject the other to this cleansing.

---

**5.** A party's statement or surveillance tape obtained by an opponent likely constitutes Rule 26(b)(3) work product. Unlike a party's statement, a surveillance tape or recording is not subject to automatic disclosure by the terms of Rule 26(b)(3). Nevertheless, courts have ordered production of surveillance tapes based on a principle of anticipatory disclosure. If a party will use the tapes at trial, it necessarily must waive the work product protection. As a result, a court can order the tapes' pretrial disclosure in order to prevent undue delay and disruption at trial. *See Snead v. American Export–Isbrandtsen Lines, Inc.,* 59 F.R.D. 148, 151 (E.D.Pa.1973); *Martin v. Long Island R.R. Co.,* 63 F.R.D. 53 (E.D.N.Y. 1974); *Romero v. Chiles Offshore Corp.,* 140 F.R.D. 336 (W.D.La.1992).

The policy rationale relating to substantive evidence has even greater force when a party manufactures a recording of events. First, one party will have already reviewed the recording in question and would have an undue or unfair advantage of having or being able to prepare for its deposition with the recording, while denying the same opportunity to the opponent. *See e.g., Roberts,* 883 F.Supp. at 505; *Superior Beverage Co. v. Schweppes (USA), Ltd.,* No. CIV. A. 87–3641, 1988 WL 46601 (E.D.Pa. May 3, 1988). Second, it has been noted that not only may those surveilled or recorded be tempted to alter the truth, but also those conducting the surveillance or recording. *Boyle v. CSX Transp., Inc.,* 142 F.R.D. 435, 437 (S.D.W.Va. 1992). A party manufacturing evidence will likely produce it in a fashion presenting his or her case in a most favorable light. Unfavorable evidence may well not be gathered or conveniently lost or discarded. All of this counsels against delaying production of a recording because the recording itself assumes such importance that ascertaining its integrity outweighs any impeachment value it might have.

■ To the extent that cross-examination is important to reveal the truth, the court has a duty to make sure its application is even-handed to all who would proclaim the truth. When a party seeks to use a recording which majorly constitutes substantive evidence, that party is using the recording to establish the truth of the case. Therefore, when a party has *obtained* a recording of another party but wants to delay production until after that other party's deposition, the court will deny the request where the recording majorly constitutes substantive evidence.

In the instant case, the Court finds that the audiotape majorly constitutes substantive evidence. It allegedly provides evidence of an oral contract. If the "truth" is on the audiotape, then the value of allowing plaintiff to impeach defendant's representatives will be minimal. Next, although not secretly recorded, plaintiff and its representative have had access to this tape and used it to prepare for the litigation. Thus, it has had the advantage of preparing its testimony on an important substantive issue in this case. In order not to distort the truth-finding process of cross-examination, defendant should have the same opportunity. Finally, although not decisive in the instant case, there is a controversy concerning the completeness of the tape and the full circumstances of its being manufactured. That issue must be clarified prior to the depositions, but the Court does not find good cause to delay either the production or the depositions while this is being accomplished. All of these factors persuade the Court to exercise its discretion to deny plaintiff's Rule 26(c)(2) motion to require defendant's representatives to subject themselves to a deposition prior to plaintiff turning over the audiotape.

**IT IS THEREFORE ORDERED** that plaintiff's motion for a protective order (docket no. 16) pursuant to Fed.R.Civ.P. (c)(2) requiring defendant's representatives to attend a deposition prior to plaintiff producing an audiotape of the March 17, 1997 meeting be, and the same hereby is, denied, and plaintiff shall forthwith produce to defendant a copy of the audiotape.