Perry G. MASON Plaintiff

v.

T.K. STANLEY, INC. Defendant

No. 204CV207KSJMR.

United States District Court,
S.D. Mississippi,
Southern Division.
Hattiesburg Division.

Aug. 2, 2005.

Paul B. Caston, Montague, Pittman & Varnado, Hattiesburg, MS, for Plaintiff.

Gary E. Friedman, Saundra Gayle Brown, Phelps Dunbar, Jackson, MS, Rebekah J. Stephens, Waller, Lansden, Dortch & Davis, PLLC, Nashville, TN, for Defendant.

4. An indefinite stay is an extreme measure which *Landis* strongly discourages.

## ORDER OVERRULING MOTION FOR RECONSIDERATION

STARRETT, District Judge.

This cause is before the Court on Motion for Reconsideration filed by Plaintiff Perry G. Mason (hereinafter "Mason") requesting this Court to reconsider the Magistrate Judge's ruling concerning Defendant T.K. Stanley's Motion to Compel Production and to Strike Deposition of Frank Pittman, and the Court, after reviewing the submissions of the parties and hearing oral argument from the attorneys, finds that the Motion for Reconsideration should be overruled for the following reasons.

### FACTUAL BACKGROUND

Plaintiff surreptitiously recorded conversations with employees of T.K. Stanley (hereinafter "Stanley"). These recorded conversations addressed, *inter alia,* substantive issues in the litigation, and because of the nature of the conversations, portions of them would be admissible into evidence as "statements against interest" Fed.R.Evid. 801(d)(2). Although Stanley propounded interrogatories to Mason which addressed audio tapes in possession of the plaintiff, the tapes were not furnished in discovery. Upon the taking of the deposition of Frank Pittman, an employee of Stanley, the tapes were produced, and Pittman was confronted with the recording of his conversation with Mason. The deposition was terminated, and a motion was made to compel production of tapes. Mason's attorney stated he fully intended to produce the tapes but would do so only after deposing the persons secretly recorded.

### ANALYSIS

This Court is confronted with two wrongs or potential wrongs, one being the failure to timely comply with discovery requests and the other being a potentially untruthful witness. The primary Fifth Circuit authority regarding withholding of audio/video evidence for use as impeachment came in *Chiasson v. Zapata Gulf Marine Corp.,* 988 F.2d 513 (5th Cir.1993). In *Chiasson,* the panel considered a surveillance tape of a purportedly injured plaintiff in which the plaintiff was seen for brief clips carrying out day-to-day activities. *Id.* at 514. The defendant in that action argued that the tape would only be used at trial for impeachment purposes and that under Rule 26, it need not be furnished through pre-trial discovery if limited to that purpose. *Id.* After the trial court allowed the admission of the tape into evidence and the jury returned a verdict for defendant, and the Fifth Circuit held that the tape's admission was reversible error.

The panel in *Chiasson* had difficulty with the defense claim that their motives and actions were unassailable because "the potential perjurer has no cause to complain or be surprised if defendants elect to disprove the case on trial instead of in the conference room." *Id.* at 517. As the panel stated, the argument "proceeds on the premises that witnesses whose testimony is designed to impeach invariably have a monopoly on virtue and that evidence to which the attempted impeachment is directed is, without exception, fraudulent." *Id.* at 517 (internal citations omitted).

More importantly, the court noted that the evidence withheld was more than just fodder for impeachment—it actually consisted of evidence substantive to the merits of the case. Because the claim was based on the plaintiff's "great physical and mental pain and anguish," evidence that tended "to prove or disprove such losses must be considered substantive." *Id.* As substantive evidence, it must be produced before trial through discovery and may not be withheld no matter how it might be characterized by the opposing party.

In *Varga v. Rockwell International, Corp.,* 242 F.3d 693 (6th Cir.2001) the Sixth Circuit made the same point, that impeachment evidence must be produced prior to trial, by forceful language worth reiterating here:

At oral argument counsel for *Rockwell* was asked to explain the absence of cases supporting his rule that a party served with specific discovery requests may withhold otherwise relevant evidence if that party unilaterally concludes that the only useful purpose for the evidence at trial is impeachment... [T]he reason there are no cases to support *Rockwell's* evidentiary

proposition is that it is patently wrong. We take this occasion to emphasize what Rule 26(b) makes perfectly clear: the recipient of a properly propounded document request must produce all responsive, non-privileged documents without regard to the recipient's view of how that information might be used at trial. A party may not, under any circumstances, hold back materials responsive to a proper discovery request because it prefers to use the evidence as surprise impeachment evidence." *Id.* at 697. Further support is found in *Wright and Miller* where it is noted that "the initial disclosure requirements exclude items that the disclosing party may use 'solely for impeachment,' but no such limitation applies to materials sought through discovery.... The fact that the party responding to discovery intends to use the material only for impeachment does not take it out of the realm of discoverable material if it is otherwise relevant." 8 CHARLES A. WRIGHT, ARTHUR R. MILLER & RICHARD L. MARCUS, FEDERAL PRACTICE AND PROCEDURE § 2015, Supp. at 49 (2d ed. 1997 & Supp.2005).

Though this authority is limited to the production of the impeachment evidence only prior to trial, a point not contested in the current litigation, the issues and concerns raised in that analysis are equally applicable and inform the Court as to *when during discovery such evidence must be turned over.*

### Are the recordings substantive evidence?

District courts considering the proper sequence of production for secret recordings have often relied on the distinction between evidence that is purely impeachment and that which has substantive value to the issues being litigated. The most significant case drawing this distinction is *Pro Billiards Tour Assoc., Inc. v. R.J. Reynolds Tobacco Co.,* 187 F.R.D. 229 (M.D.N.C.1999). In that case the plaintiffs secretly recorded a meeting with defendants at which an oral contract was allegedly formed. The plaintiffs then sought to test the recollection and truthfulness of the defendants by withholding the tapes until the representatives involved could be deposed.

The district court decided, upon collecting case law, that "classifying evidence as to its relative importance as either impeachment or substantive evidence provides the best criteria for determining whether to delay production of evidence until after a party has been deposed." *Id.* at 231. The court ruled that because the substantive value of the evidence outweighed the impeachment value it might possess, the plaintiff would not be permitted to withhold the tapes. The court noted that in previous cases "where the substantive value of the evidence predominates, production has not been delayed until after the deposition." *Id; see also Stoldt v. Centurion Indus., Inc.* 2005 WL 375667 (D.Kan. Feb. 3, 2005). Although both of these opinions are more on point with the facts of this case than *Chiasson,* they echo the concerns expressed in *Chiasson* with production and distribution of substantive evidence as soon as possible to expedite justice.

### What issues of fundamental fairness are implemented by delay?

Perhaps the primary common-sense purpose for withholding the audio tapes until after the deposition is the deep commitment and interest in insuring that a witness testifies truthfully.

The Court certainly has a deep and abiding interest in and commitment to insuring that witnesses testify truthfully, whether at trial or in deposition. But, while the Court may acknowledge the purpose behind a party's withholding what may be characterized as impeachment-only evidence, at the same time it has little patience with any rationale that would allow such tactics when used by a plaintiff but not when attempted by a defendant.

A case addressing the seeds of this argument was before the Eastern District of California in 1995. In *Roberts v. Americable Int'l, Inc.,* 883 F.Supp. 499, 501 (E.D.Cal. 1995) the plaintiff secretly recorded a number of conversations with co-workers in preparation for an employment discrimination and wrongful termination suit against her employer. Like the instant matter, the defendants only became aware of the existence of the tapes at a deposition, after which they reviewed their prior informal requests for production of the materials they now were

certain existed. *Id.* The plaintiff, along with averring tangential procedural issues, argued that she should not be required to produce the tapes prior to deposing the recorded speakers, simply because the tapes would only be used to impeach the witnesses.

*Roberts* found that the spirit and purpose of the discovery rules would be violated by allowing the plaintiff to ambush potential deponents with previously unidentified tapes at their depositions. The court noted that it would be unfair to subject the employees to an exercise "the partial purpose of which is simply to create inconsistencies or otherwise set up impeachment" without "having had a chance to review the tapes—the same opportunity that the plaintiff had prior to her deposition." *Id.* at 505. Further, quoting rule 26(c), which allows the court to enter an order protecting parties from "annoyance" or "oppression," the court found that "taking the defendant's deposition prior to his having an opportunity to review all tapes is annoying or harassing at the very least." *Id.*

Yet not all districts have held that such material must be furnished prior to depositions. For a case going the opposite direction from *Roberts,* the plaintiff cites *Blount v. Wake Elec. Membership Corp.,* 162 F.R.D. 102, (E.D.N.C.1993). In *Blount* the court held that the defendants must disclose surveillance footage of the purportedly injured plaintiff but could wait to do so until after he was deposed regarding the extent of his injuries. In the court's words, "the timing of the disclosure must be such that the impeachment value of the evidence is preserved" so as to "discourage plaintiff from altering his testimony in light of what the films or tapes reveal." *Id.* at 104.

An even more interesting opinion upholding a similar rolling disclosure of surveillance materials is *Walls v. International Paper Co.,* 192 F.R.D. 294 (D.Kan.2000). In *Walls* the plaintiff brought suit against her former employer for wrongful termination under the ADA as well as for violation of Title VII of the Civil Rights Act of 1964. *Id.* at 295. Prior to instituting the suit, the plaintiff had surreptitiously recorded certain conversations between herself and the plant supervisor. *Id.* During discovery, the plaintiff refused to surrender copies of the tapes to opposing counsel until given the opportunity to depose the supervisor. *Id.*

Yet there are real equitable and fairness concerns that argue in favor of compelling the production and predisposition access to such statements. As identified by the court in *Pro Billiards,* the party who created the tapes "will have already reviewed the recording in question and would have an undue or unfair advantage of having or being able to prepare for its deposition with the recording, while denying the same opportunity to the opponent." It certainly strains fairness and predictability, both overarching concerns of the trial process, to allow a party unlimited time to craft the perfect series of questions to ambush a deponent.

Perhaps more importantly, the court must bear in mind that the evidence in question was wholly crafted and produced by the party in interest for use against his opponent. Again, the court in *Pro Billards* noted, "a party manufacturing evidence will likely produce it in a fashion presenting his or her case in a most favorable light. Unfavorable evidence may well not be gathered or conveniently lost or discarded. All of this counsels against delaying production of a recording because the recording itself assumes such importance that ascertaining its integrity outweighs any impeachment value it might have." *Id.* at 232.

The party in the instant case epitomizes the problem of allowing a rolling disclosure. With absolutely no warning, an unauthenticated and previously-unidentified tape was sprung on an unsuspecting witness who had absolutely no chance for preparation. Even a witness honestly attempting to recall events truthfully would be rattled by such a display. At a minimum and as properly identified by Chief Magistrate Judge John Roper, the exercise violated the spirit of *Chiasson* as embodied in that Court's statement that "the federal rules promote broad discovery so that all relevant evidence is disclosed as early as possible, making a trial less a game of blind man's bluff and more a fair contest." *Chiasson,* 988 F.2d at 517 (internal citations omitted).

*CONCLUSIONS*

For the above reasons, this Court declines to reverse the ruling by Chief Magistrate Judge Roper. The audio tapes offer substantive evidence which trumps their impeachment value and should be disclosed as soon as practical. The deposition of Mr. Pittman is quashed but if may be taken by the plaintiff, if he so desires, subsequent to production of the tapes.